State v. Darrah.

THE STATE v. DARRAH, Appellant.

In Banc, December 5, 1899.

1. **Special Law**: CONSTITUTIONAL AUTHORITY. A law enacted by the Legislature in obedience to an express mandate of the Constitution for the purpose of carrying into effect one of its provisions, is not a special law.

2. ———: ———: INSOLVENT BANKS: DEPOSITS. Section 3581, Revised Statutes 1889 (relating to the punishment. of a bank officer responsible for the receipt of money on deposit in the bank after he has knowledge that it has become insolvent, and making the failure of the bank *prima facie* evidence of his knowledge of such fact), is within the terms of section 27 of article XII of the Constitution, and hence is not special legislation within the meaning of section 53 of article IV.

3. ———: ———: ———: EQUAL PROTECTION: TRUST COMPANIES. Nor does such section, nor such provision of the state constitution, deny to bankers, etc., that equal protection of the laws guaranteed by the fourteenth amendment to the Constitution of the United States, simply because the officers of trust companies can not be punished thereunder for like offenses.

4. ———: ———: STATE CONSTITUTION: MAKING INVALID BY STATUTE. No enactment of the Legislature can impair the validity of a constitutional provision.

5. **Instructions**: VENUE. If no other conclusion can be drawn from the evidence and the instructions taken as a whole than that the crime was committed in the county where the defendant was indicted, if committed at all, the case will not be reversed although the instructions were not as explicit on that point as might have been.

6. ———: BANK: WHEN INSOLVENT: PANICS. A bank is in failing circumstances within the meaning of section 3581, Revised Statutes 1889, when from any cause it is unable to pay its debts in the ordinary or usual course of business. And the fact that this condition may have been produced by a "financial panic" affords no justification or excuse for the receipt by its president of deposits, knowing the bank to be in failing circumstances.

State v. Darrah.

7. ———: INDICTMENT AS EVIDENCE. An instruction given for the State contained this clause: "The court instructs the jury that the indictment of itself is no evidence of guilt." *Held,* that the use of the words "of itself" could not in the mind of the ordinary juror have prejudiced the defendant's rights.

8. ———: BANK FAILURE: PRESIDENT AS BORROWER. The court told the jury "that it is not of itself a crime for the president of a bank to borrow money from the bank," etc. *Held,* that the use of the words "of itself" is no such comment on the evidence as to constitute error, the evidence as to the bank's financial condition showing that the president was a heavy borrower from the bank.

9. ———: ———: VALUE OF ASSETS: HEARSAY EVIDENCE. Opinion as to the value of assets of a bank on the day of its failure, may be based solely upon information obtained from others by means of correspondence.

10. ———: ———: ———: ———: TO DISREGARD EXPERT OPINION. It is error to refuse an instruction to the effect that the jury may disregard the opinions of expert witnesses in estimating the value of the assets of a bank at the time of its failure, if they deem such opinions unreasonable.

11. ———: ———: PRIMA FACIE CASE: PRESUMPTION OF INNOCENCE. An instruction to the effect that the presumption of innocence with which the defendant is clothed, rests with him throughout the trial, notwithstanding a *prima facie* case may have been made out against him under the statute, of knowledge of the insolvency of a bank of which he is the executive officer, should be given in a trial of such officer for receiving deposits knowing the bank to be insolvent. And in this case it is *held* that the court erred in refusing such an instruction.

12. ———: NOT CURED BY OTHER INSTRUCTIONS. Although the skilled lawyer might find the substance of a refused instruction incorporated in the other instructions given, yet the defendant is entitled to have the proper rule of evidence presented to the unskilled mind of the jury in clear and unmistakable terms.

*Appeal from Jackson Criminal Court.*—HON. JOHN W. WOFFORD, Judge.

REVERSED AND REMANDED.

WARNER, DEAN, GIBSON & McLEOD and GAGE, LADD & SMALL for appellant.

(1) The court erred in refusing to give instruction numbered 4, asked by the defendant. The general rule in sup-

port of which the citation of authorities is unnecessary, is that hearsay evidence is incompetent to establish any specific fact which in its nature is susceptible of being proven by witnesses who can speak from their own knowledge. An examination of the evidence in this case, and notably the testimony of Mark Coppinger and John W. Moore, witnesses on behalf of the State, will convince the court that in giving an opinion as to the value of a very considerable portion of the assets of the bank regarding which they testified, their opinions were based exclusively upon what they had learned by corresponding with parties, parties even in some cases that they did not know. To illustrate, the witness, Mark Coppinger, testified that the value of 60 shares of the stock of the First National Bank of Clay Center, Kansas, was sixty cents on the dollar, that he had arrived at the value of this stock by correspondence. The rule is that statements or declarations of third persons, not made in the presence of, or authorized by the party to be affected, are hearsay unless they are such as to constitute a part of the *res gestae*. Cable v. McDaniel, 33 Mo. 363; Fouque v. Barges, 71 Mo. 389; Dunn v. Altman, 50 Mo. App. 231. (2) The court erred in refusing instruction numbered 10, asked by defendant. This instruction has been approved time and time again by this court and should have been given. St. Louis v. Rankin, 95 Mo. 192; Hull v. St. Louis, 138 Mo. 626; State v. Lowe, 93 Mo. 547. (3) The court erred in refusing to give instruction numbered 11, asked by defendant. This instruction follows as closely as can be an instruction, not only in the letter, but in the spirit of the opinion of this court in the case of State v. Buck, 120 Mo. 495.

EDWARD C. CROW, Attorney-General, and SAM B. JEFF-RIES, Assistant Attorney-General, for the State.

(1) Instruction numbered 11, offered by defendant, was properly refused. Even though this instruction may embody

a correct principle of law, yet no error was committed on account of refusing to give it to the jury. By instructions 5, 12, 13 and 14 given, it becomes unnecessary to further instruct upon the proposition involved in the refused instruction. State v. Burlingame, 146 Mo. 207. These instructions are sufficient to admonish the jury that it devolves upon the State to prove defendant's guilt and embodies every principle, so far as applicable to this case, contained in instruction numbered 11. (2) Instruction numbered 6 is in good form and under the ruling of this court has been upheld. But be that as it may, it does not constitute reversible error although offered in the manner stated. State v. Pratt, 121 Mo. 751. (3) Defendant's instruction numbered 4 was properly refused. Witnesses Coppinger, Moore and Holden properly qualified themselves so as to testify to the value of the assets of the bank on the tenth day of July, 1893, the time the assignment was made and the day on which the deposit in question was received. As such witnesses they had the right to testify as to the value of such assets in bulk. Such evidence is admissible as a matter of necessity. Seyforth v. Railroad, 52 Mo. 452; Dalzell v. Davenport, 12 Iowa 437; Clark v. Baird, 9 N. Y. 183; Ferguson v. Stafford, 33 Ind. 162; Railroad v. Windsor, 51 Ind. 238; Wharton on Law of Evid. sec. 449; Terry v. McNeil, 58 Barb. 141; Chaffee v. U. S. 18 Wall. 542.

BRACE, J.—By section 27, article XII of the Constitution it is provided that: "It shall be a crime, the nature and punishment of which shall be prescribed by law, for any president, director, manager, cashier or other officer of any banking institution, to assent to the reception of deposits, or the creation of debts by such banking institution, after he shall have had knowledge of the fact that it is insolvent, or in failing circumstances; and any such officer, agent or manager shall be individually responsible for such deposits so received, and all such debts so created with his assent."

By section 3581, Revised Statutes 1889, passed in pursuance of this constitutional mandate (State v. Kelsey, 89 Mo. 623); it is provided: "If any president, director, manager, cashier or other officer of any banking-institution, or the owner agent or manager of any private bank or banking institution doing business in this State, shall receive or assent to the reception of any deposit of money or other valuable thing in such bank or banking institution, or if any such officer, owner or agent shall create or assent to the creation of any debts or indebtedness by any such bank or banking institution, in consideration or by reason of which indebtedness any money or valuable property shall be received into such bank or banking institution, after he shall have had knowledge of the fact that such banking institution or the owner or owners of any such private bank is insolvent or in failing circumstances, he shall be deemed guilty of larceny, and upon conviction thereof shall be punished in the manner and to the same extent as is provided by law for stealing the same amount of money deposited, or valuable thing: Provided, that the failure of any such bank or banking institution shall be *prima facie* evidence of knowledge on the part of any such officer or person that the same was insolvent or in failing circumstances when the money or property was received on deposit."

Under this section the defendant was indicted, convicted and his punishment assessed at two years in the state penitentiary, in the criminal court of Jackson county. After an unsuccessful motion for a new trial, the case was duly appealed to this court. On the trial exceptions were saved to the action of the court in admitting and rejecting some of the evidence, which is assigned as error. The case was submitted to the jury on the following instructions:

"1. The court instructs the jury that these instructions contain the law of this case. It is the duty of the jury to apply the proven facts of the case to the law here given, and find their verdict accordingly.

"2.    The court instructs the jury that if you shall believe from the evidence that the defendant at the county of Jackson and State of Missouri, at any time within three years next before the 13th day of October, 1893, was the president of the Kansas City Safe Deposit & Savings Bank, and that the same was a corporation and doing business as a banking institution in said county and State, did then and there unlawfully and feloniously assent to the taking and receiving on deposit in said banking institution the money of Christina Voight to the amount of thirty dollars or more, and that said banking institution was then and there in failing circumstances and that the defendant was then and there the president of said banking institution doing business as such, and that the defendant had knowledge at the time when such deposit was received that said banking institution was in failing circumstances, you will find the defendant guilty and assess the punishment by imprisonment in the penitentiary for any time not less than two years and not more than five years.

"Feloniously, as used in these instructions, means wickedly and against the admonition of the law; unlawfully.

"3.    If the jury believe from the evidence that on July 10th, 1893, the witness Christina Voight did deposit in the Kansas City Safe Deposit & Savings Bank, a banking institution doing business in the State of Missouri, at the county of Jackson, three hundred dollars, or any part thereof of the value of thirty dollars or more, lawful money of the United States, of the money and property of the witness Christina Voight, and shall further believe, from the evidence, that the said deposit was not taken and received by the defendant himself, but was taken and received by some other person, but that such person was then and there in the employ of the said Kansas City Safe Deposit & Savings Bank, and acting under the direction and control of the defendant in said employment, and that such other person had general power and authority from the defendant to receive deposits of money into said bank, and that said

bank was then and there in failing circumstances, and the defendant had knowledge that said bank was there and then in failing circumstances, they will find the defendant guilty as charged.

"4.    The court instructs the jury that a banking institution is in failing circumstances when it is unable to meet the demands of its depositors in the usual and ordinary course of business, and this is true even though you shall believe that there was at the time a stringency in the money market.

"5.    The court instructs the jury that the failure of the banking institution in question is *prima facie* evidence of knowledge on the part of its president that the same was in failing circumstances on July 10, 1893.

"The court instructs the jury that *prima facie* evidence is such that raises such a degree of probability in its favor that it must prevail, unless it be rebutted, or the contrary proved.

"6.    The jury are instructed that in considering the condition of the bank on the 10th day of July, 1893, you will not take into account the three hundred thousand dollars of capital stock as a liability.

"The court instructs the jury that the indictment of itself is no evidence of guilt.

"7.    The court instructs the jury that in determining the condition of the Kansas City Safe Deposit & Savings Bank on the 10th day of July, 1893, you should consider the reasonable market value of the assets of the bank on hand as compared to its liabilities on that day; all consideration of the condition of the bank is confined to the 10th day of July, 1893, but you may consider any evidence that may be before you showing its condition immediately before that day, if there is any such, to aid you in determining its condition on that day.

"8.    In determining the guilt or innocence of the defendant you may take into consideration all the facts and circumstances before you.

"9.   The court instructs the jury that it is not of itself
a crime for the president of a bank to borrow money from the
bank of which he is president, and you can consider the fact
that the defendant borrowed money from the bank in question,
if you find he was president of the bank and did borrow money
from the bank, in determining the condition of the bank the
10th of July, 1893, and for no other purpose.

"10.   If you believe that the money was deposited in the
name of Mrs. E. Voight and Mrs. Seitzler, if you find it was
so deposited, and that Christina Voight had possession and care
of the same, then for the purpose of this case, said money was
the money of Christina Voight.

"11.   In determining the question as to the condition of
the bank on the 10th day of July, 1893, you will consider the
assets and their reasonable market value on that day, and with-
out any reference to any indorsement of any of the notes made
after the 10th day of July, 1893.

"12.   The court instructs the jury that it is no offense
for an officer of a bank to assent to the receipt of a deposit by
such bank, when the same is in failing circumstances, if at the
time of receiving such deposit the officer did not at the time
know it was in failing circumstances, but in taking into con-
sideration the question as to whether or not the bank in ques-
tion was in failing circumstances on the 10th day of July,
1893, and as to whether or not the defendant had knowledge
on that day of its condition, you may consider all the facts and
circumstances in evidence before you.

"13.   The court instructs the jury that before they can
convict the defendant they must be satisfied of his guilt be-
yond a reasonable doubt; such doubt to authorize an acquittal
upon reasonable doubt alone must be a substantial doubt of
the defendant's guilt, with a view to all the evidence in the
case, and not a mere possibility of the defendant's innocence.

"14.   The court instructs the jury that the law presumes
the innocence and not the guilt of the defendant, and this pre-

sumption of innocence attends the defendant throughout the trial, and at the end entitles the defendant to an acquittal unless the evidence in the case when taken as a whole satisfies you of defendant's guilt beyond a reasonable doubt, as defined in these instructions.

"15.   The court instructs the jury that the defendant is a competent witness in this case, and you must consider his testimony in arriving at your verdict, but in determining what weight and credibility you will give to his testimony in making up your verdict, you may take into consideration, as affecting his credibility, his interest in the result of the case, and that he is the accused party on trial, testifying in his own behalf.

"16.   If verbal statements of the defendant have been proven in this case, you may take them into consideration with all the other facts and circumstances proven.   What the proof may show you, if anything, that the defendant has said against himself, the law presumes to be true, because against himself; but anything you may believe from the evidence that defendant said in his own behalf, you are not obliged to believe, but you may treat the same as true or false, just as you believe it true or false, when considered with a view to all the other facts and circumstances in the case.

"17.   The jury are the sole judges of the credibility of the witnesses, and the weight and value to be given to their testimony.

"In determining as to the credit you will give to a witness, and the weight and value you will attach to a witness's testimony, you should take into consideration the conduct and appearance of the witness upon the stand; the interest of the witness, if any, in the result of the trial; the motives of the witness in testifying; the witness's relation to, or feeling for or against the defendant, or the alleged injured party; the probability or the improbability of the witness's statements; the opportunity the witness had to observe and to be informed as to matters respecting which such witness gives testimony, and

the inclination of the witness to speak truthfully or otherwise as to matters within the knowledge of such witness. All these matters being taken into account, with all the other facts and circumstances given in evidence, it is your province to give to each witness such credit and the testimony of each witness such value and weight as you deem proper.

"18.   In determining as to the guilt or innocence of the defendant you should take into account the testimony in relation to his character for honesty, integrity and veracity, and you should give to such testimony such weight as you deem proper; but if, from all the evidence before you, you are satisfied beyond a reasonable doubt, as defined in these instructions, that the defendant is guilty, then his previous good character, if shown, can not justify, excuse, palliate or mitigate the offense, and you can not acquit him merely because you may believe he has been a person of good repute.

"19.   The court instructs the jury that in determining the question of whether or not the Kansas City Safe Deposit & Savings Bank was in failing circumstances on the 10th day of July, 1893, you should consider the liabilities of the bank and the reasonable market value of the assets of the bank on that day, regardless of any change, if any, or additional security, if any, which may have been given, since that day. If you shall find from the evidence that any part of the assets of said bank have been proven to have a market value, then you should give such assets such intrinsic value as may have been shown by the evidence in the case, and if there be any of said assets, to wit, stocks, bonds or negotiable paper, that have not, in your opinion, from the evidence, been shown to have a market value nor an intrinsic value, then such assets are presumed to be worth their face value. This will have no application to such assets as may have been shown by the evidence to have no value at all, provided there is such evidence as to any of the assets of said bank.

"20.   The court instructs the jury that under article XI of the by-laws of the Kansas City Safe Deposit & Savings Bank, and under the laws of the State governing savings banks, the board of directors of the Kansas City Safe Deposit & Savings Bank had a right to require 90 days' notice of the withdrawal of time deposits."

To which exceptions were saved, and the giving of those numbered 3, 4, 5, 6, 9, 16, and 18 is assigned as error.

The defendant asked and the court refused to give the following instructions:

"1.   The court instructs the jury that the finding of the indictment in this case is not to be considered by you in arriving at your verdict as any evidence that the defendant is guilty of the crime therein charged.

"4. The court instructs the jury that if you find from the evidence that any witness in this case has given an opinion as to the value of any of the assets of the Kansas City Safe Deposit & Savings Bank on the 10th day of July, 1893, and that such opinion is based solely upon information obtained from others by means of correspondence, then you are at liberty to disregard such evidence.

"10.   The court instructs the jury that in determining the value of any of the assets of the Kansas City Safe Deposit & Savings Bank on the 10th day of July, 1893, as shown on this trial, the testimony of expert witnesses who have testified before you, if deemed by you unreasonable, may be disregarded.

"11.   The court instructs the jury that although by the statute the failure of the Kansas City Safe Deposit & Savings Bank is made *prima facie* evidence of the knowledge on the part of the defendant that the same was in failing circumstances on the 10th day of July, 1893, yet the burden of proving the State's case is not really changed. The law enables the State to make a *prima facie* case by proof of the assenting to the creation of said indebtedness and the reception of the

money into the bank, but the defendant can show the condition of the bank and the circumstances attending the failure and any facts tending to exonerate him from criminal liability, and then on the whole case the burden still rests on the State to establish defendant's guilt beyond a reasonable doubt.   The presumption of innocence with which the defendant is clothed and never shifts, rests with him throughout the case, notwithstanding a *prima facie* case may have been made out by the State."

The refusal to give these instructions is complained of as error, as well as the refusal to give some others, which need not be set out, by which the constitutionality of section 3581 was called in question.

The defendant was the president of The Kansas City Safe Deposit & Savings Bank, and the indictment is for the receipt of the same deposit made by Christina Vogt, for which Sattley, the cashier of the bank, was prosecuted and convicted, State v. Sattley, 131 Mo. 464, where the character, condition and history of this bank and of defendant's connection therewith as well as the circumstances of the deposit sufficiently appear for the purposes of this opinion, in which we have only questions of law to deal with.

(1)   It is contended by the learned counsel for the defendant that section 3581, *supra*, under which the defendant was indicted, is unconstitutional, in that it is in violation of section 53 of article IV of the Constitution of this State prohibiting special legislation, and within the inhibition of section 1 of the fourteenth amendment to the Constitution of the United States, which forbids any State to deny to any person within its jurisdiction the equal protection of the laws.

This act was first passed in 1877 (Laws 1877, p. 239), was amended and revised in 1879, and appears in the Revision of that year as section 1350, which first came before this court in the Kelsey case, *supra*, and in which it was held that the section did not apply to private bankers.   Afterwards by an

act approved March 18, 1887, the section was amended so as to include "the owner, agent or manager of any private bank or banking institution" (Laws 1887, p. 162), and as thus amended, with slight verbal alterations, passed into the Revised Statutes of 1889 as section 3581, as hereinbefore set out.

The offense of which the defendant was convicted was committed on the 10th day of July, 1893. The bank of which he was president was a banking institution, duly incorporated under the laws of this State, and there is and can be no question but that the offense was not only within the terms of the statute as it then existed, but as it had always previously existed from the beginning, as well as within the terms of the constitutional provision aforesaid, which authorized its enactment. That a law thus enacted in obedience to an express mandate of the Constitution for the purpose of carrying into effect one of its provisions is not a special law, and obnoxious to the provision of section 53, article IV, of the State Constitution is well settled law (State ex rel. v. Walton, 69 Mo. 556; State ex rel. v. Tolle, 71 Mo. 645; Ewing v. Hoblitzelle, 85 Mo. 64; State ex rel. v. Hughes, 104 Mo. 459; State ex rel. v. Yancy, 123 Mo. 391; State ex rel. v. Higgins, 125 Mo. 364; Kenefick v. St. Louis, 127 Mo. 1; Spaulding v. Brady, 128 Mo. 653); and we may well pass to the consideration of the second proposition of this contention.

In the Sattley case, *supra,* it was also urged that the section is repugnant to section 1, article XIV of the amendments to the Constitution of the United States, but as the learned counsel in that case had not suggested "how this section collides with the Federal Constitution" nor assigned "any reason either verbally or in brief, in support of the objection" it was treated as frivolous. In this case no such answer can be returned to defendant's contention, which is specifically stated in the following language: "The invalidity of the statute arises from the fact that the presidents, directors, managers, cashiers, or other officers of trust companies organized and

doing business under the provisions of article XI, of chapter 42 of the Revised Statutes are exempted from its operation."

As to the institution of which the defendant was president and the offense with which he is charged and of which he was convicted, this section is a literal transcript of section 27, article XII, of the State Constitution, and if the statute is obnoxious to the 14th amendment of the Federal Constitution, the provision of the State Constitution aforesaid, which authorized its enactment, and to which it conforms, must also necessarily be in conflict with that amendment. So that the contention goes beyond the statute and attacks the validity of section 27, article XII, of the State Constitution. To which our attention can be confined, since everything that can be said impugning the validity of the statute impugns as well this provision of the State Constitution, the invalidity of which must be conceded, if inconsistent with the 14th amendment to the Federal Constitution (Neal v. Delaware, 103 U. S. 370), which forbids any State to "deny to any person within its jurisdiction the equal protection of the law."

"State legislation is not obnoxious to this provision, if all persons subject to it are treated alike under similar circumstances and conditions in respect both to the privilege conferred and the liabilities imposed." 6 Am. and Eng. Ency. of Law (2 Ed.), p. 967, and cases cited in notes 7 and 8. It was said by Mr. Justice FIELD in Missouri Pacific Railway Co. v. Mackey, 127 U. S. loc. cit. 209: "The greater part of all legislation is special, either in the objects sought to be attained by it, or in the extent of its application......Such legislation does not infringe upon the clause of the fourteenth amendment requiring equal protection of the laws, because it is special in its character......And when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws, if all persons brought under its influence are treated alike under the same condi-

tions." And by this court, per BLACK, J., in State v. Loomis, 115 Mo. loc. cit. 313: "There is no doubt but many of our legislative enactments operate upon classes of individuals only, and they are not invalid because they so operate, so long as the classification is reasonable and not arbitrary. Thus it is perfectly competent to legislate concerning married women, minors, insane persons, bankers, common carriers and the like; and the power of the Legislature to prescribe police regulations applicable to localities and classes is very great, because such laws are designed to protect property and the safety, health and morals of the citizen." And by an eminent author: "The Legislature may also deem it desirable to prescribe peculiar rules for the several occupations, and to establish distinctions in the rights, obligations, duties and capacities of citizens. The business of common carriers, for instance, or of bankers, may require special statutory regulations for the general benefit, and it may be matter of public policy to give laborers in one business a specific lien for their wages, when it would be impracticable or impolitic to do the same for persons engaged in some other employments. If the laws be otherwise unobjectionable, all that can be required in these cases is, that they be general in their application to the class or locality to which they apply; and they are then public in character, and of their propriety and policy the legislature must judge. But a statute would not be constitutional which would proscribe a class or a party for opinion's sake, or which should select particular individuals from a class or locality, and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt." [Cooley's Const. Lim. (6 Ed.), pp. 480-482.]

These extracts contain the substance of the doctrine on this subject deduced from all the authorities, many of which are cited in the brief of counsel for the defendant, and applying them to the provision of our State Constitution in ques-

tion and the statute enacted in obedience to it, it would seem apparent upon the very face of the provision that it is not obnoxious to the inhibitions of the fourteenth amendment to the Federal Constitution.

The language of the provision is comprehensive of a whole class. It exempts no one of that class. It applies to every president, director, manager, cashier or other officer of every banking institution in the State.   By it all persons of that class are treated alike under similar circumstances and conditions.   The classification is a natural and reasonable one, and the class, from the peculiar relation it sustains to the public, whose property the law is designed to protect, is a proper subject of such legislation.   In fact, the defendant's contention seems to concede that this provision, and the act passed in obedience to it, has no inherent vice, but originally was, and continued to be, valid legislation until the passage of the Act designated in the Revised Statutes of 1889, as article XI of chapter 42, and entitled "Trust Companies."

This Act was first passed and approved March 20, 1885, so that according to this contention, the provision of the State Constitution and the Act passed in obedience to it, in question, which up to that time were not obnoxious to the Federal Constitution; by virtue of this enactment at once came under the ban of the fourteenth amendment and ceased to be valid law; in view of the fact, that this court held in State v. Reid, 125 Mo. 43, that the officers of a trust company are not included within the provisions of section 3581.

If these officers were not included within the terms of that section, they were not included within the terms of the constitutional provision, for the terms of each are the same, the one as broad as the other, and no broader, and hence the whole must fall.

In support of this remarkable contention, we have been favored with a forcible argument by the learned and able counsel for the defendant, tending to show that these trust

companies are banking institutions, and that their officers are conducting the same kind of business under like circumstances, and in similar conditions with the officers of the banking institutions of the State. The force of the argument is appreciated, and conceding for the sake of the argument that the proposition may have been demonstrated, yet the validity of the provision of the State Constitution and of the Act passed in obedience thereto is in no way affected by the conclusion, the only effect of which would be to bring these officers of trust companies within the same general terms of the constitutional provision, and of the Act, that includes the defendant and the officers of every other banking institution in the State. While this argument based upon the amendment to the Federal Constitution may impugn the conclusions reached in the Kelsey and Reid cases, when viewed in the light of that amendment, it does not touch the validity of the provision of the State·Constitution or that of the Act passed in obedience thereto and in the terms thereof. In neither of those cases was this Federal question raised, and neither of them are authority in this case. No act of the Legislature could have the effect of impairing the validity of a constitutional provision and no decision of this court in a case where the validity thereof was not questioned can be invoked as authority for producing such an effect. Manifestly this contention can not be maintained.

(2). The objections urged to the instructions upon which the case was submitted to the jury will be next considered.

To number 3 it is objected that the jury were not therein required to find that the offense charged was committed in Jackson county, nor was it required to find from the evidence that the defendant was an officer of the Kansas City Safe Deposit & Savings Bank.

Instructions to the jury are to be taken as a whole, and are ordinarily read in the order in which they are numbered. By instruction No. 2 the jury had just been required to find

that the offense charged was committed in Jackson county, and that the defendant was the.president of the bank.   On the trial the fact that the bank was in Kansas City in Jackson county; that the defendant was its president, and that the deposit was there made and received, while he was such president giving his personal attention to its affairs, was shown not only by the uncontradicted evidence in the case, but by the evidence of the defendant himself.   Under such circumstances, the fact that this instruction was not as explicit in the particulars mentioned as it might have been, could not possibly have injured the defendant, and ought not to work a reversal of the judgment.

(3).   The objections to instruction numbered 4 are answered by the case of State v. Burlingame, 146 Mo. loc. cit. 227, in which it was in effect held that a bank is in failing circumstances when from any cause, it is unable to pay its debts in the ordinary or usual course of business, and that although this condition may have been produced by a "financial panic," that fact affords "no justification or excuse for the receipt by defendant as its president of moneys upon deposit, knowing that the bank was in failing circumstances."

(4).   Instruction numbered 5 is a literal transcript of the seventeenth instruction given in the Sattley case, *supra*, and was expressly approved in that case, the court on page 492, saying:   "This instruction is a rescript of the statute and was expressly approved after an exhaustive examination and discussion in State v. Buck, 120 Mo. 479."   The whole force of the criticism upon this instruction would have been dispelled, if the court had given instruction No. 11 refused, which will be noticed later.

(5).   The objection to instruction numbered 6 is to the second paragraph, which is as follows:   "The court instructs the jury that the indictment of itself is no evidence of guilt." Counsel for defendant contend that in giving this paragraph, and in refusing to give instruction numbered 1, for the de-

fendant, the court committed error. It sems to be conceded that the substance of instruction number 1 is included in this paragraph, and that the latter would not be objectionable but for the words "of itself" contained therein. The effect of which, it is contended, is to authorize the jury to take the fact of the indictment into consideration with the other facts and circumstances in the case in determining the question of defendant's guilt or innocence and thus give to that fact some weight in the determination. In the trial of every criminal case, the jurors are necessarily advised that the defendant has been indicted for the offense charged, and it does not appear to us at all probable that any greater weight was given to that fact in the mind of the jury by reason of the phraseology of this paragraph, than would have been if the words "of itself" had been left out. While the hypothetical significance of these words contended for, might appear perhaps to the acute perception of the skilled verbal critic, we are satisfied that such significance would not appear to or influence the practical mind of the ordinary juror. It is not at all to be feared that the defendant's case was prejudiced to any extent by reason of the action of the court on these instructions.

(6). Counsel for defendant attach a like sinister significance to the same words "of itself" as used in instruction number 9, and complain of that instruction for that reason, and for the further reason that the same is, as they contend, a comment upon the evidence. To the first complaint no further answer need be returned than is contained in the preceding paragraph. As to the second, it is only necessary to say, that in showing the financial condition of the bank on the 10th of July, 1893, the evidence disclosed the fact that the defendant was indebted to the bank in large sums for borrowed money. This evidence was perfectly legitimate for that purpose, and the evident intent of this instruction was to limit the effect of the evidence to that purpose, in order that the defendant's case might not be, in any other wise, pre-

judiced thereby, as the court might well do, the proper application of the evidence to the case, being a question of law, and not a comment on the evidence in the case. The instruction is not very happily worded, but its meaning is clear and intelligible, and we can not see that injury could have resulted to defendant from its phraseology.

(7). Instruction number 16 is the same as instruction numbered 7 in the Sattley case, as to which this court on page 490 of that case said: "Instruction numbered 7 has been approved so often in this State that we must decline to enter upon its defense. [State v. Carlisle, 57 Mo. 102; State v. Brown, 104 Mo. 365; State v. Wisdom, 119 Mo. 539.]" By this instruction the jury are required to take all the statements of the defendant, whether for or against himself, into consideration, with all the other facts and circumstances proven. And while the criticism to which the last paragraph is subjected by the learned counsel for the defendant in the present case may be well enough from the standpoint of the critical lawyer, yet when the instruction as a whole is looked at from the standpoint of the practical juror for whose mind it is intended, and which has not been trained to the nice distinctions between disputable and indisputable presumptions, it loses all its force. This instruction has proven to be a good workable instruction for many years, is not calculated to mislead a jury, and continues to command our approval.

(8) The same may be said of instruction No. 18, in regard to evidence of good character, which is criticised in like manner, but which in substance has frequently been approved by this court. [State v. Jones, 78 Mo. 278; State v. Kilgore, 70 Mo. 546; State v. McMurphy, 52 Mo. 251; State v. Alexander, 66 Mo. loc. cit. 160.] It is not subject to the criticism on the instruction in the last case.

(9). We come now to the consideration of the instructions refused, which have been made the subject of exception, and not yet disposed of. In ruling on instruction No. 4 of

these, the error assigned upon the admission of the evidence, upon which it is based, will also be disposed of. We do not think the court committed error in admitting this evidence and in refusing this instruction. The objection is of course that the opinions were formed upon hearsay, and is well answered by an eminent author as follows: "Value, it must be remembered, consists in the estimate, in the opinion of those influencing a market, attachable to certain intrinsic qualities belonging to the article to be valued. The opinion of such persons can only be presented, in most cases, by hearsay. A broker, for instance, who is called as to the market value of a particular piece of property, and who is cross-examined as to the sources of his knowledge, must ultimately say 'it came from A., B., and C.' Even should we call A. B. and C., we would get no further than hearsay; for the testimony of either A., B., or C., as to what he would give for the article, is of little weight, unless such testimony is based, not on any properties of the thing making it peculiarly valuable to this particular witness, but on the estimation at which the thing is generally held in the market. Hence it is that it is no objection to the evidence of a witness testifying as to the market value that such evidence rests on hearsay. So it is admissible to fall back, as a basis of opinion, on prices current, provided they be traceable to reliable sources." [Wharton on Evidence (3 Ed.), sec. 449.]

(10). We do think, however, the court committed error in refusing instruction No. 10 telling the jury, that they might disregard such opinion or estimates if deemed by them to be unreasonable. [City of Kansas v. Butterfield, 89 Mo. 646; St. Louis v. Ranken, 95 Mo. 189; Cosgrove v. Leonard, 134 Mo. 419; Hull v. St. Louis, 138 Mo. loc. cit. 626; Hoyberg v. Henske, 153 Mo. 64.]

(11). We also think the court committed error in refusing to give instruction No. 11. This instruction is a clear and concise presentation of the principle by which the jury

should have been governed in arriving at their verdict under the statute governing the case, as expounded in State v. Buck, 120 Mo. loc. cit. 492, in which the constitutionality of the statute was questioned on account of the new principle of evidence which it introduced, and which is not common to ordinary criminal cases.

That the instruction was a proper one, is not disputed by the Attorney-General, but it is contended that the substance of it may be spelled out from instructions Nos. 5, 12, 13 and 14, given. We do not think so. The giving of No. 5, on the contrary, emphasized the necessity of giving this instruction. [State v. Burlingame, 146 Mo. 207.] It was not at all aided by instruction No. 12 and instructions No. 13 and 14 are the instructions usually given in ordinary criminal cases, and while it may be possible, that they would disclose to the legal mind, the proper application of the principle contained in this instruction, it is much to be feared that they might not, to the unskilled mind of the ordinary juror, and the liberty of the citizen ought not to be exposed to such a hazard. As the fate of the defendant in this case depended upon the proper application of a rule of evidence prescribed by statute, for this particular class of cases, he was entitled to have it presented to the jury in clear and unmistakable terms as was asked for in this instruction. We find no error in the rulings of the court upon the admission or rejection of evidence. But for the error in refusing to give instructions numbered 10 and 11, the judgment will be reversed and the cause remanded.

All concur except SHERWOOD, J., absent.