THE STATE v. THOMAS K. SHELBY, Appellant.—64 S. W. (2d) 269.

Court en Banc, October 19, 1933.

*Cole & Hukriede, Claude R. Ball* and *Clarence A. Barnes* for appellant.

1038

*Stratton Shartel,* Attorney-General, *Edward G. Robison,* Assistant Attorney-General, *A. O. Kamp* and *A. H. Juergensmeyer* for respondent.

COOLEY, C.—By information filed in the Circuit Court of Montgomery County defendant was charged with violation of Section 4116, Revised Statutes 1929 (since repealed), in that, as cashier and director of the Commercial Bank of Wellsville, in said county,

he feloniously received into said bank a deposit of $100, knowing the bank to be insolvent and in failing circumstances. He was granted a change of venue to the Circuit Court of Warren County where upon trial he was convicted and sentenced to three years' imprisonment in the penitentiary. Defendant's appeal was taken March 30, 1931. The delay in disposing of the case here is due to the fact that the judge to whom it was originally assigned for an opinion had not found time to write it before he retired from the bench and, owing to changes in the personnel of the court the parties were given opportunity to reargue the case at the present term of court. The State's evidence tended to show the following:

The bank was incorporated and began business in December, 1903, with a capital of $15,000. It continued to operate until May 10, 1930, when it was closed by resolution of its board of directors and placed in the hands of the State Commissioner of Finance who proceeded to liquidate it and it was still in process of liquidation at the time of the trial in January, 1931. For about four years next prior to the closing of the bank defendant had been its cashier as well as a director and had had the active charge and management of its affairs, making the loans and attending generally to the business of the bank. The deposit in question was received for the bank and credited to the depositor by defendant in person on May 1, 1930, ten days before the bank closed. About May 7, defendant left Wellsville and remained away some two months, returning however of his own volition before the charge herein was filed. While absent his whereabouts appear to have been unknown to the other directors and to his friends. In this situation, on May 10, three of the five directors held a "special meeting" and adopted a resolution stating that "it was deemed advisable to place the affairs of the bank in the hands of the Department of Finance, Jefferson City, Missouri." The Commissioner of Finance thereupon took charge and in due time appointed a special deputy to liquidate the bank.

The books of the bank showed that from January 2, 1926, to May 1, 1930, its resources and business had gradually decreased. Giving the figures approximately and in round numbers, its total resources had fallen from $446,000 to $327,000; its available cash from $69,000 to $9,500; its deposits from $411,000 to $264,000; and its bills receivable from $279,500 to $232,000. On January 2, 1926, it had no borrowed money. On May 1, 1930, it owed $30,000 and was being urged to pay by its creditors. On May 1, 1930, its books showed its capital to be $15,000, surplus $15,000, and undivided profits $2223.23. Of the notes held by the bank as part of its assets the evidence tended to show that about $74,000 were worthless and that some other assets were worth considerably less than the amounts at which they were carried on the books. Certain items carried as cash items were without value. For example, a check signed by the

defendant for seventeen hundred odd dollars had been carried as a cash item, equivalent to cash, for some six months and was still so carried on May 1. It was uncollectible, defendant's account not having sufficient funds to meet it and being overdrawn when the bank closed. In several instances a note originally secured by real estate continued to be carried as an asset after the bank had taken over the real estate and carried that also as an asset, the note no longer having substantial value. In at least one instance a note which had been signed by the maker, a "straw man," purely as an accommodation to the bank and on which the maker had never made or been expected to make any payments, had been by defendant credited with interest payments as of the dates interest was due, and also with a payment on principal, giving it the appearance of a live and solvent asset. It had no real value though carried as an asset. The books did not show that the bank actually received any money from any source to justify the credits on the note. Those and other similar circumstances were proved as bearing upon the alleged failing circumstances of the bank and defendant's knowledge thereof. We deem it unnecessary to make an extended summary of the nearly six hundred pages of testimony contained in the transcript. It is sufficient to say that the State made a submissible case both on the question of the alleged insolvency or failing circumstances of the bank and defendant's knowledge thereof. It is but fair to add, however, that the evidence did not show any embezzlement or conversion by defendant of bank funds or property. It was just another of the many instances furnished by the history of the last few years in which a bank, because of the general decline in property values and solvency of borrowers, was unable to keep going, tried too long to do so in the face of portents of coming disaster, which its officers and directors should have noted and heeded, and finally was forced to close in spite of the efforts of such officers and directors to maintain it.

Defendant did not take the witness stand. By eight or nine witnesses he proved a good reputation for honesty, integrity and fair dealing, which was not contradicted. Aside from that and some evidence tending to prove the genuineness of the signature to a note carried as an asset of the bank, which the State had attempted to show was forged, he offered no evidence.

I. Appellant challenges the constitutionality of the statute upon which the prosecution was based, on two grounds, viz., that Section 27 of Article 12 of the Constitution impliedly denies the Legislature power to establish a "rule of evidence" in cases coming within the purview of the statute, and that said provision of the statute violates subsection 17 of Section 53, Article 4 of the Constitution in

that it is a special law regulating the practice and changing the rules of evidence in a judicial proceeding in the circuit court.

Section 27, Article 12 of the Constitution provides that it shall be a crime, "the nature and punishment of which shall be prescribed by law," for any president, director, manager, cashier or other officer of a banking institution to assent to the reception of deposits or the creation of debts by such institution after he shall have had knowledge of the fact that it is insolvent or in failing circumstances.

Section 4116, Revised Statutes 1929, prescribed that any such officer or director receiving or assenting to the reception of deposits, etc., after having knowledge that the banking institution was insolvent or in failing circumstances, should be deemed, guilty of larceny and upon conviction punished as for stealing money of like amount, and added: "Provided, that the failure of any such bank or banking institution . . . shall be prima facie evidence of knowledge on the part of any such officer or person that the same was insolvent or in failing circumstances when the money or property was received on deposit."

In his printed argument appellant concedes, and we think rightly, that without the constitutional provision referred to the Legislature in its general and plenary power to legislate would have had authority to create the offense denounced by said Section 4116. But he argues that the constitutional provision quoted restricts the legislative power in regard to such offense to prescribing the "nature and punishment" of the crime and by necessary implication denies it authority to prescribe what shall constitute prima facie evidence of knowledge on the part of the bank's officers of its failing condition. Appellant cites no authority in support of this contention. We think it unsound. ■ The State Constitution is not a grant of power, but rather a limitation on the power of the Legislature. The power to make laws is lodged in the Legislature, subject only to the restrictions contained in the state and national constitutions. [Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 339, 205 S. W. 196; Pitman v. Drabelle, 267 Mo. 78, 84, 183 S. W. 1055, 1056.] The Legislature having plenary power to enact laws, absent constitutional restrictions, such restrictions must be expressed in the Constitution or clearly implied by its provisions. [McGrew v. Mo. Pac. Ry. Co., 230 Mo. 496, 525 et seq., 132 S. W. 1076.] ■ A statute will not be held to violate the Constitution if it can reasonably be given a construction in harmony therewith. [Pitman v. Drabelle, supra.] Constitutional restrictions will not be held to apply if reasonable doubt exists in the judicial mind as to their repugnancy to the act under revew. [Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 1. c. 350, 351, 205 S. W. 196.] Legislative acts and constitutional provisions must be read together and so harmonized as to give effect to both when this can consistently be done. [Straughan v. Meyers,

268 Mo. 580, 187 S. W. 1159; State ex rel. Harvey v. Sheehan. 269 Mo. 421, 190 S. W. 864.]

The provision of the Constitution in question contains, in terms, no inhibition upon the power of the General Assembly to legislate generally upon the subject there referred to nor, in our judgment, does it, by necessary implication, restrict the otherwise plenary power of that body. We think it was intended rather as a direction to the General Assembly to legislate to the extent therein indicated than as a limitation of the legislative power. The assailed provision of the statute is not inconsistent with the main part thereof creating the offense and prescribing the punishment nor with the constitutional provision. Instead, it doubtless was designed to aid in putting the constitutional provision into effective operation, and, so far as concerns the point now under consideration, its enactment was clearly within the power of the Legislature.

The contention that said Section 4116, Revised Statutes 1929, was violative of subsection 17 of Section 53, Article 4 of the Constitution is sufficiently answered in State v. Darrah, 152 Mo. 522, 54 S. W. 226. Said Section 53 of Article 4 prohibits the Legislature from passing local or special laws. Subsection 17 thereof, relative to regulating the practice and changing the rules of evidence in judicial proceedings specifies certain matters concerning which local or special laws shall not be enacted. The prohibition in subsection 17, as in the other subsections, is against the enactment of local or special laws, not laws of general application. In the Darrah case the statute in question was challenged as violative of Section 53, Article 4 of the Constitution, though from a somewhat different angle. However, what is there said clearly demonstrates that this contention of appellant is not well founded. The statute in question was not a local or special law and was not in contravention of said constitutional provision.

II. The sufficiency of the information is challenged for that it fails to charge any offense; that it is duplicitous in that it charges defendant both as cashier and director, and charges that the bank was both insolvent and in failing circumstances; that it fails to charge that the check deposited was endorsed by the payee or that he delivered it to the defendant or that it was received by defendant during business hours or that it was received by the bank through the agency of defendant as cashier or director. The charging part of the information reads:

" . . . one Thomas K. Shelby, being then and there cashier and director of the Commercial Bank of Wellsville, Wellsville, Missouri, a corporation duly organized and existing under the laws of the State of Missouri, the same being a banking institution, doing business in said County and State, a certain deposit of a certain valuable

thing, the same being a certain written instrument whereby a certain obligation was assigned, to-wit: a certain check, which said check is in words and figures as follows:

" 'Wellsville, Mo., May 1, 1930.
" 'COMMERCIAL BANK OF WELLSVILLE .
" 'Pay to the Order of C. H. Christopher $100.00, One Hundred Dollars (immaterial memorandum on check omitted)
" ' (signed) GEO. E. AUSTIN,
" 'By T. K. SHELBY,'

endorsed C. H. Christopher, of the value of One Hundred Dollars ($100.00) and being the property of one C. H. Christopher, unlawfully and feloniously did take, have and receive on deposit in said Commercial Bank of Wellsville, which said banking institution was then and there insolvent and in failing circumstances, after he, the said Thomas K. Shelby, had knowledge of the fact, and well knew that said Commercial Bank of Wellsville, Wellsville, Missouri, was then and there insolvent and in failing circumstances."

The information is in substantially the form that has heretofore met the approval of this court. [See State v. Buck, 120 Mo. 479, 25 S. W. 573; State v. Lively, 311 Mo. 414, 279 S. W. 76.] It was not duplicitous. Defendant was both director and cashier. In either capacity he was subject to the statute creating the offense and there could be no impropriety in charging the fact that he was both director and cashier. As to charging both insolvency and failing circumstances of the bank, there is little if any difference in the meaning of those terms as they have been defined in instructions which have been approved by this court in cases coming before it which arose under the statute in question. The information sought to and did charge but one offense. Where an offense may be committed in either of two ways it is permissible to charge its commission conjunctively in both ways, if they are not inconsistent, and prove either or both. [State v. Flynn, 258 Mo. 211, 167 S. W. 516. See, also, State v. Spano, 320 Mo. 280, 6 S. W. (2d) 849.] An indictment charging that the bank was "insolvent and in failing circumstances" was held good in State v. Sanford, 317 Mo. 865, 297 S. W. 73. A perusal of the charging part of the information above set out shows that the other criticisms offered by appellant are not well founded.

Appellant makes a further contention that since the check deposited by Christopher was drawn upon the same bank in which he deposited it, the bank's assets were not thereby increased or affected; that it was a mere bookkeeping transaction and does not fall within the statute. Whether it changed the amount of the bank's assets or not it was a deposit by Christopher the same as though it had been a check drawn on some other bank, which was held in State v. Salmon, 216 Mo. 466, 115 S. W. 1106, to constitute a deposit

within the meaning of the statute. The statute makes no such exception nor would such interpretation thereof be in harmony with its evident purpose. We think the information sufficient.

III. Appellant contends that Instruction No. 5, given by the court, is prejudicially erroneous because of the direction therein which we italicize. The instruction reads as follows:

"The court instructs the jury that the failure of the Commercial Bank of Wellsville on May 10th, 1930, if you find it did so fail, is prima facie evidence of the knowledge on the part of the defendant that the same was in failing circumstances on the 1st day of May, 1930.

"And you are further instructed that prima facie evidence *is such that raises such a degree of probability in its favor that it must prevail unless it is rebutted or the contrary proven.*

"Yet, you are further instructed the burden of proving the State's case is not really changed.

"The law enables the State to make a prima facie case by proof of the taking, having and receiving on deposit in said Commercial Bank of Wellsville of a valuable thing, and the subsequent failure of said bank, if you find it did so fail, and then on the whole of the case the burden still rests on the State to establish the defendant's guilt beyond a reasonable doubt.

"The presumption of innocence with which the defendant is clothed never shifts but rests with him throughout the case, notwithstanding a prima facie case may have been made by the State."

In giving that instruction the learned trial court followed our prior decisions as it was his duty to do. We have approved instructions containing substantially the same direction in State v. Buck, supra; State v. Sattley, 131 Mo. 464, 33 S. W. 41; State v. Darrah, supra; State v. Lively supra; State v. Peer (Mo.), 39 S. W. (2d) 528, and perhaps others. The leading case on the point, one in which it received extended consideration, is State v. Buck. In the Darrah case it was held that a counter instruction requested by the defendant should have been given. The substance of that instruction is incorporated in Instruction No. 5 herein, constituting the portion thereof following the italicized words. The instruction as given in the instant case is substantially a rescript of the one on the same subject given in the Peer case, which the writer hereof, speaking for Division Two of the court and reversing the case on other grounds, approved, following State v. Darrah, supra. In view of the importance of the principle involved we have re-examined this question in the light not only of our own decisions but those of other jurisdictions and have come to the conclusion that our prior rulings on this point were wrong and should be overruled.

In State v. Buck, 120 Mo. 1. c. 490, 25 S. W. 573, it is said that "it has repeatedly been held that the Legislature has the right to declare what shall be presumptive evidence of any fact." The cases cited in support of the statement are civil cases. But even in criminal cases, by the weight of authority, it is held that the Legislature has power to provide that certain proved facts shall be prima facie evidence of another fact necessary to be established, but generally with the qualification that the fact upon which the presumption is to rest must have some relation to or natural connection with the fact to be inferred and that the inference of the existence of the fact to be inferred from the existence of the fact proved must not be purely arbitrary or wholly unreasonable, unnatural or extraordinary. [See 10 R. C. L., p. 177, sec. 171; State v. Lapointe, 81 N. H. 227, 123 Atl. 692, 31 A. L. R. 1212, and note; People v. Cannon, 139 N. Y. 32, 34 N. E. 759, 36 Am. St. Rep. 668, and note.] In Robertson v. People, 20 Colo. 279, 38 Pac. 326, a statutory provision was upheld which made the failure of a bank within thirty days after the receipt of a deposit prima facie evidence of knowledge on the part of the officer who received ·it that the bank was insolvent when the deposit was received. Similarly it was held in Meadowcroft v. People, 163 Ill. 56, 45 N. E. 991, 54 Am. St. Rep. 447, 35 L. R. A. 176, and in State v. Beach, 147 Ind. 74, 46 N. E. 145, 36 L. R. A. 179, that statutory provisions were valid which made the failure of a bank within thirty days after the receipt of a deposit by a banker prima facie evidence of fraudulent intent on the part of such banker at the time he received the deposit. Our statute contains no limitation as to time. The failure of the bank is made prima facie evidence of knowledge on the part of the officer receiving the deposit that the bank was insolvent or in failing circumstances when the deposit was received. In terms it takes no cognizance of the time that may have intervened or changes that may have occurred even in the bank's directorate and officers between the reception of the deposit and the failure of the bank. The bank may have been perfectly solvent when the deposit was received. If the bank thereafter failed and the officer who received the deposit was prosecuted under the statute, no matter how long after the receipt of the deposit the failure occurred, by the literal terms of the statute such failure was made prima facie evidence that the officer who received the deposit knew the bank was insolvent or in failing circumstances when he received it.

In the Buck case the bank failed about a month after the receipt of the deposit in question. The court said such failure had a tendency to show that the bank was in failing circumstances, if not in fact insolvent, at the time the deposit was received, "and the law which makes its failure *so recently thereafter* prima facie evidence that it was insolvent or in failing circumstances at that time, is neither unjust nor unconstitutional." (Italics ours.) But the requirement

that the failure, in order to constitute prima facie evidence must occur *recently* after the receipt of the deposit or within a time such that the failure might be said to have a reasonable tendency to show the bank's condition when the deposit was received can be read into the statute, if at all, only by judicial construction. We think the validity of that provision of the statute, worded as it is, at least open to question. But since its constitutionality has not been assailed in this case except on the specific grounds above discussed and it has been repealed, Laws 1931, page 201, we shall for the purpose of this discussion assume its validity.

The statute does not purport to make the failure of the bank *conclusive* evidence of knowledge on the part of the officer receiving a deposit that it was in failing circumstances or insolvent when the deposit was received. So construed it would be unconstitutional. [State v. Intoxicating Liquors, infra; O'Donnell v. Wells, 323 Mo. 1170, 21 S. W. (2d) 762; State ex rel. v. Atkinson, 271 Mo. 28, 42, 195 S. W. 741, 745; Manley v. State of Georgia, 279 U. S. 1, 49 Sup. Ct. 215.] It is a fundamental principle of our law that one accused of crime is presumed to be innocent until proved guilty. He is not required to prove his innocence but the burden rests upon the State to prove his guilt, a burden that under the long-established and well-settled rule in this State never shifts, and he has the constitutional right to have the jury determine the facts. While the Legislature, with limitations as above suggested, may provide that a certain proved fact shall be sufficient to constitute prima facie evidence of another fact necessary to be established, it is still for the jury to determine whether or not the fact to be inferred is sufficiently proved. The jury alone may finally and conclusively determine whether or not a fact which *may* be inferred from a proved fact *should* be so found. For a clear and able discussion of this question, see State v. Lapointe, supra, wherein many authorities are reviewed. As said in that case, 31 American Law Reports, l. c. 1215, quoting from State v. Intoxicating Liquors, 80 Me. 57, 12 Atl. 794, 7 Am. Crim. Rep. 291:

"The very essence of 'trial by jury' is the right of each juror to weigh the evidence for himself, and, in the exercise of his own reasoning faculties, determine whether or not the facts involved in the issue are proved. And if this right is taken from the juror, if he is not allowed to weigh the evidence for himself,—is not allowed to use his own reasoning faculties, but, on the contrary, is obliged to accept the evidence at the weight which others have affixed to it, and to return and affirm a verdict which he does not believe to be true, or of the truth of which he has reasonable doubts,—then, very clearly, the substance, the very essence, of 'trial by jury,' will be taken away, and its form only will remain."

Prima facie evidence is sufficient under the statute to establish the fact of knowledge on the part of the officer if credited and deemed sufficient by the jury. It warrants but does not compel the inference to be drawn. The jury must in all cases be satisfied of the defendant's guilt beyond a reasonable doubt, and the statute cannot be construed or in its application given the effect of coercing or in effect directing the jury to convict or to find an essential element of the crime against the accused.

The statute in effect makes the failure of the bank prima facie evidence of two essential elements of the crime denounced, viz., that the bank was in fact insolvent or in failing circumstances when the deposit in question was made and that the accused had knowledge of such condition. In State v. Walser, 318 Mo. 833, 1 S. W. (2d) 147, we condemned an instruction because it expressly so directed the jury. We there said that the instruction went beyond the statute in directing the jury that failure of the bank was prima facie evidence that it was insolvent when the deposit in question was made. That instruction did go beyond the express terms of the statute. But while the statute does not in terms make the bank's failure prima facie evidence that it was insolvent when the deposit was made, that is its necessary effect. One cannot have knowledge of a fact unless that fact exists. To say, therefore, that the failure of the bank is prima facie evidence that its officer had knowledge that it was insolvent when he received a certain deposit is equivalent to saying that the failure is prima facie evidence that it was insolvent at that time. The officer could not know that it was insolvent unless in fact it was so. This court recognized that fact in the Buck case, wherein it is said, 120 Mo. l. c. 488, 25 S. W. 573, that the statute makes the failure of the bank prima facie evidence "not alone of the insolvency of the bank at the time the money was received, but of the knowledge of the persons therein named of that fact." An instruction following the language of the statute as does the one in controversy could hardly be understood by the jury otherwise than as meaning that the failure of the bank was prima facie evidence of both of said facts. At least it would be readily susceptible of being so understood, thus making possible the finding of two vital facts by inference from a proved fact which the statute makes prima facie evidence of the main facts.

The instruction tells the jury that under the law this prima facie evidence *must prevail* unless it is rebutted or the contrary proved. By whom? The jury would naturally understand that direction to mean that upon proof by the State of the reception of the deposit and the failure of the bank the law required them to convict, unless the defendant introduced evidence sufficient to overcome the State's case or at least to raise a reasonable doubt of his guilt; in other words, that the burden of proof shifted to the defendant to exculpate him-

self. If a part of the State's case may be established in that way why may not the whole of it? The defendant may of course offer evidence in this kind of case as in any criminal case. But he has the right not to do so and to require the State to prove every element of the crime charged and to have the jury determine the facts untrammeled by coercive directions from the court. That fundamental right cannot be taken away or abridged by the privilege of offering evidence in his own behalf. In this State the court is not permitted to sum up or to comment upon the evidence. It may not in any way indicate to the jury its views as to the weight of the evidence. Yet by this instruction it tells the jury that certain evidence must be given conclusive effect unless rebutted or disproved. The statute does not attribute that effect to such evidence.

In State v. Malone, 327 Mo. 1217, 39 S. W. (2d) 786, we held an instruction bad that told the jury in a murder case in which the defendant claimed self-defense that the burden rested on him to show to the reasonable satisfaction of the jury that he acted in self-defense. We held that as malice is an essential element of the crime of murder and there could not be malice if the killing was justifiable, the burden rested on the State to prove that element of the offense and did not shift to the defendant to exonerate himself, citing many authorities. So here, knowledge on the part of the officer receiving a deposit that the bank is insolvent is an essential element of the offense. Without such knowledge there is no offense. The statute *permits* the jury to find such guilty knowledge from the fact of the bank's failure but that does not authorize the court to instruct them in effect that they are constrained so to do.

We have held that in criminal cases ''no court in Missouri has the power or right to direct a verdict of guilty, in the face of our constitutional guaranty of trial by jury, our statute forbidding the judge to sum up or comment on the evidence.'' [State v. McNamara, 212 Mo. 150, 169, 110 S. W. 1067.] In State v. Buck, supra, 120 Mo. l. c. 495, 25 S. W. 573, the court said: ''The presumption of innocence with which the defendant is clothed, and which never shifts, rests with him throughout and notwithstanding the prima facie case made out by the State, it must still go further. 'A prima facie case will not warrant a conviction.' [State v. Rector, 23 S. W, 1074.]'' [Rector case is reported in 126 Mo. 328.]

Suppose that in a case such as this the defendant formally admitted at the trial every fact charged in the indictment except that he had knowledge of the bank's insolvency when the deposit was received and offered no evidence. Could the court direct a verdict of guilty? We think manifestly it could not. It would still be for the jury, the sole triers of the facts, to decide whether the inference, permissible under the statute, should be drawn.

In the Buck case the court referred *arguendo* to the presumption then indulged in this State that the unexplained possession of stolen property recently after it had been stolen raised a presumption that the possessor was the thief. Some of the other cases in which we have approved the instruction here in question made similar reference by way of argument. That argument loses its force in view of the later decision of the court en banc in State v. Swarens, 294 Mo. 139, 241 S. W. 934, overruling earlier decisions and holding it improper for the court to instruct that such recent possession raised a presumption of guilt. It was also held in the Swarens case that such instruction erroneously shifted the burden of proof to the defendant and further that it was a comment on the evidence. We think the reasoning of the Swarens case condemns the instruction under consideration in the instant case.

In State v. Lively, supra, 311 Mo. l. c. 441, 442, 279 S. W. 76, the Swarens case is distinguished on the ground that the Legislature has authority to declare that proof of certain facts shall constitute prima facie evidence of other facts which may be inferred and that the courts are bound by such enactment; whereas the Swarens case did not deal with a statutory rule of evidence. We cannot see that such distinction makes any substantial difference as to the propriety of the instruction in question. The statute only makes a certain proved fact prima facie evidence of another alleged fact. The instruction goes much farther.

The instruction in the case in hand recognizes that it was not the purpose of the statute to destroy the presumption of innocence with which every defendant in a criminal case is clothed nor to shift to him the burden of proof, as do all the cases in which we have approved this instruction. The instruction attempts to preserve to the defendant those fundamental rights. But that it does in effect shift the burden of proof seems to us clear. The direction that the prima facie evidence *must prevail* unless rebutted or the contrary proved seems to us to be in irreconcilable conflict with the remainder of the instruction in which the court tells the jury that the burden of proof is not changed and that the presumption of innocence continues. At best the instruction taken as a whole could but be confusing, even when read with the instructions given at defendant's request, which properly explained his rights and the burden of proof that rests upon the State. Those correct declarations could not remove the prejudicial effect of the peremptory direction that the prima facie evidence must prevail unless rebutted or the contrary proved. Of what avail to tell the jury that the burden still rests upon the State to prove beyond a reasonable doubt all the facts necessary to make defendant guilty when they are also told that in contemplation of law one of those facts must be taken as so proved by virtue of or by inference from another proved fact unless the defendant has dis-

proved it to the satisfaction of the jury? Such is the effect of the instruction.

We are not without precedent in holding the instruction in question prejudicially erroneous. In State v. Momberg et al. (N. D.), 103 N. W. 566, the defendants were convicted of keeping a place where intoxicating liquors were sold. The statute provided that the fact that a person engaged in business kept posted in his business place a receipt or stamp showing payment of a federal tax on the sale of liquor or a federal license to sell liquor should be deemed prima facie evidence that such person was keeping for sale and selling intoxicating liquor contrary to the State statute. The trial court charged the jury that the finding of a United States license on defendants' premises was prima facie evidence of their guilt and that: "By prima facie evidence is meant evidence which you must receive as conclusive, unless the same is explained by the defendants by other evidence produced before you in the case." The Supreme Court held the above-quoted charge prejudicially erroneous; that the statute did not raise a conclusive presumption against the defendants and that such prima facie evidence "is competent and sufficient to justify a jury in finding a defendant guilty, provided it does in fact satisfy them of his guilt beyond a reasonable doubt, and not otherwise;" quoting from State v. Intoxicating Liquors, 80 Me. 57, 12 Atl. 794; State v. O'Connell (Me.), 19 Atl. 86, and citing other authorities.

In State v. Simon, 163 Minn. 317, 203 N. W. 989, the defendant was convicted of carrying a pistol "with intent to use the same against another person." The statute provided that the carrying of a weapon concealed "shall be presumptive evidence of carrying, concealing or possessing it with intent to use the same." The trial court charged that if the jury found that defendant "was carrying such weapon concealed upon his person then you shall adopt the rule of law which requires you to presume that thereby and therefore, if so carried by him, it was intended to be used against another." The Supreme Court held that the statute was not intended to cast the burden of proof upon the defendant and that the trial court's charge in effect shifted to the defendant, when the State showed possession, the burden of negativing an intent to use, which was error, and cited with approval State v. Intoxicating Liquors and State v. Momberg, supra. The court further held that other correct instructions did not obviate the prejudicial effect of the one condemned.

In State v. Lapointe, supra, the New Hampshire Supreme Court construed a statute making possession of intoxicating liquor an offense unless the liquor was lawfully procured and further providing that "the possession of any intoxicating liquor within this State shall be prima facie evidence of a violation of this section." The trial court had instructed that if the jury found possession to be

proved beyond a reasonable doubt they must also find that it was illegal (there being no other evidence upon the question) and so finding must also find the defendant guilty. The Supreme Court held that "prima facie evidence," as used in the statute, meant only evidence to be considered by the jury and that the instruction given was erroneous, and for that reason reversed the judgment of conviction.

The Criminal Court of Appeals of Oklahoma has ruled similarly. In Sellers v. State, 11 Okla. Cr. 588, 149 Pac. 1071, the defendant was convicted of having had in his possession intoxicating liquor with intent to sell the same. The statute declared that possession of certain liquors "shall be prima facie evidence of an intent to convey, sell or otherwise dispose of the same." Possession had been shown by the evidence. The trial court had instructed the jury that if they found beyond a reasonable doubt that the defendant had in his possession whiskey or alcohol in excess of one quart, such fact constituted prima facie evidence that he had such possession with intent to sell, etc., and "it devolves upon the defendant to produce sufficient evidence to create in your minds a reasonable doubt as to his guilt." The court held the instruction bad as invading the province of the jury, depriving the defendant of the presumption of innocence and as a comment on the weight of the evidence. See, also, Wilson v. State, 11 Okla. Cr. 510, 148 Pac. 823, condemning an instruction based on the same statute which told the jury: "By prima facie evidence is meant such evidence as, in the absence of any other evidence to the contrary, is sufficient to establish and prove any fact or thing beyond a reasonable doubt." The same court again held prejudicially erroneous an instruction similar to that in the Sellers case in Butler v. State, 159 Pac. 1090.

In State v. Wilkerson, 164 N. C. 431, 79 S. E. 888, the defendant was convicted under a statute making it a crime for any person to have or keep in his possession for the purpose of sale any spiritous, etc., liquors. The jury were instructed that the fact (admitted in that case) of his having in his possession more than one gallon of the liquor made out a prima facie case against the defendant, and that it was then his duty "to go forward and satisfy the jury, by the greater weight of the evidence, that he did not have the liquor in his possession for the purpose of sale." The court held that had the instruction stopped with telling the jury that the fact of possession made out a prima facie case it would have been correct but that the trial court went beyond the terms of the statute and the law in giving the above quoted additional part of the instruction, which was prejudicial error. The court said that while prima facie evidence is sufficient for the jury to convict upon it alone, if no other proof is offered, yet upon the whole evidence, "whether consisting of the mere fact of possession or of additional facts, the jury are not

bound to convict, but simply may do so if they find beyond a reasonable doubt, or are fully satisfied that the defendant is guilty. . . . The jury are no more bound to convict upon a prima facie case than they are bound to acquit because of the presumption of innocence. They must judge themselves as to the force of the testimony and its sufficiency to produce in their minds a conviction of guilt." The court further said that defendant profited little or nothing by the subsequent charge of the trial court that if the jury had a reasonable doubt they should acquit. "This, to say the least of it, was very confusing if not contradictory. What advantage did he gain by the charge as to reasonable doubt, after the jury had been told that there was a presumption against him and he mus' 'satisfy them by the greater weight of the evidence' of his innocence? It deprived him of the presumption of innocence and practically eliminated the benefit of the doctrine as to reasonable doubt by so weakening it that it amounted to nothing." See also State v. Intoxicating Liquors, supra, condemning a charge to the jury which in effect required them to treat prima facie evidence as conclusive proof.

Criticisms are leveled at several of the other instructions given and to the refusal of some that were requested by the defendant. We have examined the instructions and are of the opinion that with the exception of the one we have set out they are without prejudicial error and read together as they should be would have fairly submitted the case to the jury but for the error in said Instruction No. 5.

IV. Complaint is made in the motion for new trial of the admission of certain evidence concerning transactions of defendant as cashier on the ground that such evidence tended to show other offenses and was not by the court properly limited as to the purpose for which it could be considered. The evidence was competent as bearing upon the question of the bank's financial condition and defendant's knowledge thereof. Defendant did not request any instruction limiting its effect or explaining the purposes for which it might properly be considered. We do not think the court erred in failing to give such instruction of its own motion. Some other matters are complained of in the motion for new trial in which we find no prejudicial error and which we deem it unnecessary to discuss.

For the reasons pointed out in paragraph III hereof, the judgment of the circuit court is reversed, and the cause is remanded.

PER CURIAM:—The foregoing opinion by Cooley, C., in Division Two is adopted as the opinion of the Court en Banc. All concur.