State v. Lively.

THE STATE v. IVO W. LIVELY, Appellant.

Division Two, December 22, 1925.

1. **INSOLVENT BANK: Private or Incorporated: Receiving Deposit: Information.** Under the statute (Sec. 3365, R. S. 1919), making it a larceny for an officer of any private bank or banking institution or trust company to receive money on deposit therein, knowing it to be insolvent, it is wholly immaterial whether the information, charging the cashier of a certain bank with said offense, also charge that such banking institution was incorporated under the laws of this State or was a private bank or trust company, where the proof by defendant is that the bank had a board of directors, that certain persons were respectively its president, vice-president and cashier, and that they from time to time made report under oath to the Commissioner of Finance relating to the business transactions and condition of the bank, stating therein that it was incorporated.

2. ———: **Time Deposit: Loan.** Receiving money by a bank on time deposit, and issuing a certificate of time deposit for the amount, to be paid, with interest from date, in four months and not before, is receiving money on deposit within the meaning of the statute (Sec. 3365, R. S. 1919) making it larceny for the cashier or other officer of a bank to receive a deposit of money or other valuable thing after he knows that such banking institution is insolvent or

State v. Lively.

in failing circumstances. A certificate of deposit, signed by the defendant cashier, is a written acknowledgment by the bank and said cashier of the receipt on deposit of the sum of money therein named, which the bank promises to pay to the depositor, or to his order, and is not to be considered as a mere loan.

3. ———: Instruction: Assumption of Fact: If, Etc. An instruction telling the jury that "if you find and believe from the evidence that one Ivo W. Lively was cashier of the Bank of Jamesport, Missouri, a corporation duly organized under the laws of the State of Missouri," etc., does not assume that the Bank of Jamesport was a corporation.

4. ———: Knowledge at Time of Deposit: Instruction Broader than Statute. An instruction telling the jury that if the defendant cashier "at the time of receiving the deposit of said money and check had knowledge of the fact that said Bank of Jamesport was insolvent or in failing circumstances," etc., is not broader than the statute (Sec. 3365, R. S. 1919) declaring that the cashier or other officer of a bank is guilty of larceny who receives money or other valuable thing on deposit "after he shall have had knowledge of the fact that such banking institution . . . is insolvent or in failing circumstances." If the officer knows at the time he receives the deposit that the bank is insolvent, its reception is after the acquisition of the knowledge. The length of time he possessed such knowledge prior to receiving the deposit is of no consequence; it is his consciousness, at the moment he receives the deposit, of the peril to depositors, that makes the act criminal.

5. ———: ———: Debts and Assets. An instruction pertaining to the bank's insolvency which tells the jury that its "demands are all sums owing by it to other banks, firms, corporations or persons, whether for money borrowed or for money deposited with it, either in time certificates of deposit or on deposit subject to checks, but the amount owing by it to its stockholders as such for its capital stock and surplus, if any, should not be considered as a debt against the bank," is not objectionable, and particularly so where instructions for defendant tell them that a bank is not expected to pay at once every debt it owes, but must be able to pay or provide for its debts as they fall due in the usual course of business.

6. ———: Evidence: Bank Examiner's Reports. In the trial of a defendant charged with receiving money on deposit in a banking institution after he knew it was insolvent, reports made under oath by the deputy to the Bank Commissioner during three years preceding its failure, showing its condition and how its business was being conducted, based upon data furnished by defendant and by its other officers and directors in his presence and sworn to by him and them, are admissible in evidence.

7. **INSOLVENT BANK: Failure Prima-Facie Proof: Presumption of Innocence: Instructions.** The proviso to the statute (Sec. 3365, R. S. 1919) declaring that the failure of a banking institution "shall be prima-facie evidence of the knowledge on the part" of its officer receiving money on deposit that "the same was insolvent or in failing circumstances when the money" was so received, is a constitutional law, and is not inconsistent with the presumption of innocence with which the law surrounds a defendant throughout his trial, and the court does not err in giving instructions which accurately present to the jury the meaning of the proviso and the presumption of innocence.

8. ———: ———: **Legislative Rule: Modification of Presumption in Swarens Case: Applicability.** The courts have no power to modify a constitutional rule of evidence established by the General Assembly. The fact that in State v. Swarens, 294 Mo. 139, and other cases, this court decided that possession of recently stolen goods is not a presumption of guilt, but only evidence of guilt, did not modify or alter, and is no ground for modifying, the statutory rule that the failure of a banking institution "shall be prima-facie evidence of the knowledge" of the officer receiving money on deposit that the bank "was insolvent or in failing circumstances" when the money was so received. The Legislature has authority to establish a rule of evidence which does not conflict with rights guaranteed by the Constitution, and in doing so it may alter rules of evidence as they existed at common law or under previous statutes, and to declare that certain facts constitute prima-facie evidence, and courts have no authority to modify a valid statutory rule; but courts do have authority to modify a common-law rule of evidence, even a rule pertaining to a presumption of innocence, where such modification does not conflict with constitutional inhibitions.

9. ———: **Failure after Receipt of Deposit: Lapse of Time before Failure: Causal Connection.** The statute (Sec. 3365, R. S. 1919) does not say how long after money is received on deposit by a banking institution the failure of the bank shall take place in order to make such failure prima-facie evidence of knowledge on the part of the officer of its insolvency; but it does require the bank to be in a failing condition at the time the deposit is received. There must be a causal connection between the failing condition and the subsequent failure, and if that condition does not result in failure but is due to subsequent causes, that fact is a good defense.

10. ———: **Incorporation: Proof.** Proof that the bank of which defendant was cashier had a full corps of officers, including a president, board of directors, cashier and clerks, and that it made reports to the Commissioner of Finance as an incorporated bank, and that it transacted business as a banking institution, is proof

that it was not a private bank or a trust company, but an incorporated bank; and under the circumstances of this case the defendant is guilty of violating the statute, by receiving money on deposit after he clearly knew it was in a failing, if not an insolvent, condition, whether the banking institution was incorporated or not.

Corpus Juris-Cyc. References: Banks and Banking, 7 C. J., Section 204, p. 580, n. 28; p. 582, n. 31; Section 205, p. 582, n. 43; p. 583, n. 62 New; Section 208, p. 584, n. 74; Section 210, p. 584, n. 74; p. 585, n. 84; Section 334, p. 646, n. 36.  Constitutional Law, 12 C. J., Section 285, p. 823, n. 15, 16, 20.  Criminal Law, 16 C. J., Section 1530, p. 745, n. 28; Section 2331, p. 952, n. 16; Section 2478, p. 1038, n. 76; Section 2493, p. 1050, n. 84; 17 C. J., Section 3331, p. 56, n. 16.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis,* Judge.

AFFIRMED.

*Davis & Ashby* for appellant.

(1)   Section 3365 as originally enacted (Laws 1877, p. 239) was intended to apply only to presidents, directors, managers, cashiers or other officers of incorporated banks and a private bank is not within the purview thereof.   State v. Kelsey, 89 Mo. 623.   (a)   Nor did said section as originally enacted apply to officers of a trust company even though such trust company exercised the functions of a bank.   State v. Reed, 125 Mo. 43.   (b) But said section was amended by the Laws 1887, page 162, so as to include owners, agents, or managers of private banks and said section was reenacted in 1895 (Laws 1895, p. 158) and made to include officers of trust companies and the later enactment is still the law and includes within its provisions the officers of incorporated banks, the officers of incorporated trust companies and owners, agents and managers of private banks.   State v. Munroe, 273 Mo. 341.   (c)   It is shown from the foregoing that at least three different kinds of banking institutions are brought within the purview of Section 3365, but the facts of this prosecution are that the record does not contain one word of evidence tending to prove that the Bank of Jamesport was ever incorporated or that it was reputed to be incorporated or that

311 Mo. Sup.—27.

it had ever exercised the functions of a corporation, nor is there any evidence that it was ever organized, and the State wholly failed in its proof in this respect. State v. Washington, 259 Mo. 335; State v. Henschel, 250 Mo. 263; State v. Duddrear, 274 S. W. 360. (2) Under Section 3365 there are four separate distinct classes of offense defined as follows: (a) to receive or (b). assent to the reception of a deposit of money or other valuable thing in such bank or banking institution or trust company or institution, (c) to create or (d) assent to the creation of any debt or indebtedness in consideration or by reason of which indebtedness any money or valuable thing shall be received into such bank in either event, while said bank is insolvent or in failing circumstances. Defendant is charged in the information with receiving a deposit in said Bank of Jamesport while the same was insolvent and in failing circumstances, whereas, the evidence on behalf of the State shows that the check and money was loaned to said bank on a "certificate of deposit" for four months at four per cent, and there was a variance between the allegations of the information and the proof. State v. Sattley, 131 Mo. 485; State v. Wells, 134 Mo. 244; State v. Bowman, 247 S. W. 143; State v. Willner, 199 S. W. 126; State v. Burgess, 268 Mo. 407. (3) A bank deposit is different from an ordinary debt, in this, that from its very nature it is constantly subject to the check of the depositor, and is always payable on demand. Peoples Bank of Wilkesbarre v. Legrand, 49 Am. Rep. 126; Houston v. Braden, 37 S. W. 467. When money is deposited in a bank and is mingled with its general funds it becomes the property of the bank, and thereby the relation of debtor and creditor arises between the bank and the depositor. State v. Pate, 268 Mo. 432. The relation of a depositor to a bank is that of ordinary debtor and creditor. The relation between the creditors and the corporation is that of contract, and not of trust. Kroeger v. Garkie, 274 S. W. 480. (4) The State's Instruction 5 is erroneous because it assumes that the

Bank of Jamesport was a corporation duly organized under the laws of the State of Missouri without proof thereof, and also fails to require the jury to find that the said Ivo W. Lively was cashier of said Bank of Jamesport, at the time he received the deposit in question, and also it is assumed in said instruction that the said Ivo W. Lively at the time he received the deposit of said money and check had knowledge of the fact that said Bank of Jamesport was insolvent and in failing circumstances, and said instruction is also erroneous because of being broader than Section 3365, R. S. 1919, upon which the information is predicated in that it only requires the jury to find that he had knowledge that said bank was insolvent or in failing circumstances at the time he received said deposit, whereas, the said statute provides that he must have received the deposit after he shall have had knowledge of the fact that said Bank of Jamesport was insolvent or in failing circumstances. State v. Helton, 234 Mo. 559; State v. Ferguson, 321 Mo. 524. (5) State's Instruction 9 is erroneous, misleading and prejudicial to defendant in referring the jury to the demands of said bank within the meaning of the foregoing instruction, whereas, the word demands is not used in any other instruction and the demands of said bank are not equivalent to and do not have the same meaning as debts, but is more comprehensive. The essence of a debt is a legal liability on the part of one person to pay money to another at some time, which liability is enforceable by a judicial action. Kidd v. Puritana Cereal Co., 145 Mo. App. 502. (a) Said Instruction 9 is also erroneous, misleading and conflicts with defendant's instruction numbered one defining "insolvency" and in "failing circumstances." (b) Said Instruction 9 is erroneous, misleading and conflicts with defendant's instruction numbered three, as said instruction ought to have referred the jury to the demands of said bank on the day the said deposit was made. (c) A "demand" is a requisition or request to do a particular thing

specified, under a claim of right on the part of the person making the request. Penn Mutual Ins. Co. v. Maner, 101 Tex. 553. (d) Insolvency under the statute relating to the receiving of a deposit is an inability to meet the ordinary demands against the bank in the usual and ordinary course of business, and instructions to that effect are approved. Eads v. Orcutt, 79 Mo. App. 511. (6) Defendant objected to the admission in evidence of exhibits 44, 46 and 48. Said objection should have been sustained as said exhibits purported to be reports made by the Deputy Finance Commissioner to the State Finance Commissioner for the years 1920, 1921 and 1922, and there was no evidence that the contents of said reports were known to the defendant or that the defendant had any knowledge of said reports whatever, and said reports contained statements, recommendations and criticisms of the officers of said Bank of Jamesport inflaming and prejudicing the minds of the jury against the defendant.

*Henry P. Lay, amicus curiae.*

(1) Instruction 8 is error because it destroys the presumption of innocence with which the defendant is clothed, and reverses the burden of proof by requiring him to rebut the presumption instructed against him. State v. Swarens, 294 Mo. 139; State v. Hogan, 252 Mo. 387; State v. Andrews, 297 Mo. 287. (a) Prima-facie evidence is simply proof of a state of facts which entitles the case to go to the jury. 31 Cyc. 1172; State v. Hardeline, 169 Mo. 579. Evidently the proviso to Section 3365 is simply a legislative direction to submit the case to the jury upon proof of certain facts; it cannot be construed as a direction to the jury as to how they will decide; if so construed it would doubtless be unconstitutional. (b) While the instruction complained of has been approved by this court in a number of cases, the objections here raised were not considered, and all these cases were before the decision in the Swarens case.

This instruction received the fullest discussion in State v. Buck, 120 Mo. 479, and State v. Sattley, 131 Mo. 464. An examination of these cases will show that in both cases the instruction is upheld because it is similar in principle to the instruction in larceny cases, then being approved, that proof of recent unexplained possession of stolen property gives rise to the presumption that the one in whose possession it is found is the thief. Upon this analogy the court sustained the giving of the instruction, and later cases approved it largely upon the authority of these cases. As the cases upon which the decisions in the Buck and Sattley cases were based have been expressly overruled in the Swarens, Hogan and Andrews cases, and the many later cases following them, of course the authority of the Buck and Sattley cases is gone. (2) Instruction 8 is erroneous, in fact is extremely prejudicial to the defendant for the further reason that it assumed the existence of controverted facts. It assumes the failure of the bank; it assumes the existence of the bank and it assumes that the defendant was an officer of the bank; none of these facts were admitted by defendant. State v. Johnson, 234 S. W. 794; State v. Mills, 272 Mo. 526; State v. Potts, 239 Mo. 403. The defendant admitted nothing; he neither took the stand nor offered any evidence, standing upon the insufficiency of the evidence offered by the State. This evidence was either lacking or very unsatisfactory as to the incorporation of the bank, the insolvency or failing condition of the bank, and defendant's connection with it. Certainly these facts cannot be said to be either admitted or uncontroverted, and the assumption of their existence in this instruction is very serious error. (3) Instruction 8 is also erroneous in that it fails to define the word "failure." State v. Strong, 153 Mo. 548; State v. Skaggs, 159 Mo. 581; State v. McLain, 159 Mo. 310. It is most earnestly insisted that this lack of definition is not only error, but most injurious to the defendant.

*Robert W. Otto,* Attorney-General, for respondent; *Claud E. Curtis* of counsel.

(1) The court properly overruled defendant's demurrer. The proof of incorporation of the Bank of Jamesport was not necessary. An officer of any banking institution who receives deposits after he knows the organization to be in failing circumstances is guilty of larceny. R. S. 1919, sec. 3365. Although the information charged that the Bank of Jamesport was incorporated, yet the lack of proof of this is not error since incorporation of the bank is not material to the case. State v. Sattley, 131 Mo. 483; State v. Decker, 217 Mo. 320; State v. Tracy, 294 Mo. 389; State v. Martin, 230 Mo. 695; R. S. 1919, sec. 3907. (2) The court did not commit error by giving Instruction 8 to the effect that the failure of the bank was prima-facie evidence of defendant's knowledge of its insolvency on August 9, 1923. State v. Sattley, 131 Mo. 492; State v. Buck, 120 Mo. 479; R. S. 1919 sec. 3365; State v. Burlingame, 146 Mo. 214. (3) Instruction No. 5 given by the court on the part of the State was not error because of an assumption of facts. Almost identical instructions have been approved in cases cited. State v. Burlingame, 146 Mo. 214; State v. Sattley, 131 Mo. 464; State v. Darrah, 152 Mo. 527. (4) The court committed no error by giving to the jury Instruction 9, in which they were told that the demands of the bank were all sums owing by it to other banks, firms, corporations or persons whether for money borrowed, or for money deposited with it, either on time certificates of deposit or on deposit subject to check. State v. Sattley, 131 Mo. 464. (a) A certificate of deposit is a written acknowledgment of money that has been received as a deposit with some bank or banker which the bank or banker promises to pay to depositor. 7 C. J. sec. 334, p. 646. (b) A time certificate of deposit comes within the provisions of Sec. 3365, R. S. 1919. 3 R. C. L. sec. 123, p. 496; 31 L. R. A. 125, note; State v. Sattley, 131 Mo. 464. (5) The court committed no error by admitting in evi-

dence the reports as to the condition of the bank, made by State bank examiners. Such evidence is admissible in this kind of a case. State v. Salmon, 216 Mo. 529. (6) No error was committed by the court overruling the defendant's demurrer. There was no fatal variance in the proof. State v. Sattley, 131 Mo. 464; State v. Booth, 186 S. W. 1019; State v. Salmon, 216 Mo. 466; R. S. 1919, scec. 3365.

RAILEY, C.—On February 4, 1924, the Prosecuting Attorney of Daviess County, Missouri, filed in the circuit court of said county an information against defendant, in two counts. The case was submitted to the jury under the second count, which, without caption, signature and jurat, reads as follows:

"Dean H. Leopard, Prosecuting Attorney within and for the county of Daviess, in the State of Missouri, under his oath of office and upon the affidavit and complaint of Mary Schuler, hereto attached and herewith filed, informs the court that on or about the 9th day of August, 1923, at said County of Daviess and State of Missouri, one *Ive* W. Lively, being then and there cashier of the Bank of Jamesport, of Jamesport, Missouri, a corporation duly organized and existing under the laws of the State of Missouri, the same being a banking institution doing business in said State, a certain deposit of money and other valuable thing, to-wit, the sum of ten dollars and twenty cents, in lawful money of the United States, of the value of $10.20, and a certain check for the sum of $389.80, drawn by J. W. Cole, administrator of the estate of Willis Cole, deceased, upon the Farmers Bank of Spring Hill, Missouri, payable to Mary Schuler, a further description of which said check is to this prosecuting attorney unknown, of the value of $389.80, said money and property being of the total value of four hundred dollars, and being the money and property of one Mary Schuler, unlawfully and feloniously did take, have and receive on deposit in said Bank of Jamesport, after he, the said Ivo W. Lively, had knowledge of the fact, and well knew that said Bank of Jamesport was then and there insolvent

and in failing circumstance, and so the said *Ive* W. Lively the money and valuable thing aforesaid and above described, of the value of four hundred dollars, the money and property of the said Mary Schuler, in manner and form aforesaid, unlawfully and did feloniously did steal, take and carry away, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.''

A change of venue was granted defendant on account of alleged prejudice of the inhabitants of Daviess County, and the cause was transferred to the Circuit Court of Livingston County, and tried there. Defendant was arraigned on April 7, 1924, and entered a plea of not guilty. On April 8, 1924, the jury before whom the cause was tried, returned the following verdict:

"We the jury find the defendant guilty as charged in the second count of the information and assess his punishment at two years' imprisonment in the State penitentiary.''

Timely motions for a new trial and in arrest of judgment were filed and overruled. Thereafter, allocution was granted, judgment rendered, sentence pronounced in conformity with said verdict, and an appeal allowed defendant to this court.

The defendant offered no evidence, but stood upon his demurrer to the evidence of the State.

The evidence on the part of the State shows substantially the following facts: That on or about August 9, 1923, defendant, Ivo W. Lively, was cashier of the Bank of Jamesport, located in Daviess County, Missouri; that he had been cashier of said bank for sometime prior to above date; that on August 9, 1923, one Harry Schuler deposited in said bank a check in the amount of $389.80 and $10.20 in cash, which deposit was received by this defendant; that a time certificate, bearing interest and promising payment in four months, was taken as evidence of this deposit; that said check was the property of Schuler's wife, representing her share of her father's estate, and was signed by J. W. Cole, Administrator;

that the above money was deposited by Schuler in behalf of his wife, and said check was endorsed by her; that no part of the money was ever repaid, because of said bank's failure; that defendant made all the loans in connection with said bank, and also transacted business in connection with loans made from the First State Bank of Kansas City, Kansas, to said Jamesport bank; that said Bank of Jamesport owed the First State Bank of Kansas City, Kansas, $9,000; that said First State Bank had bought about fifty-five thousand dollars' worth of notes from the Bank of Jamesport, which notes were signed over without recourse on the Jamesport bank; that all the collections and renewals were taken up with defendant Lively, the cashier of the Jamesport bank, instead of the signers of the notes; that sometime after said $9,000 note was given to the First State Bank a seven-thousand-dollar note was made in lieu of the nine-thousand-dollar note; that the proceeds of the seven-thousand-dollar note were placed on deposit, in the First State Bank to the credit of the Bank of Jamesport, with the understanding it was to be left there, to take up the note eventually, and it was not considered as a checking deposit; that it was customary for a bank to keep a deposit with its corresponding bank; that for this reason the First State Bank required the bank at Jamesport not to check on the seven-thousand-dollar account. The State offered in evidence the records made by the State Finance Department as to the condition of the Bank of Jamesport sometime previous to its closing. Several notes of the bank were shown by these records to be worthless. On the 23rd day of August, 1923, just fourteen days after the deposit in question was made to the above First State Bank, the Bank of Jamesport suspended its business by order of its board of directors, and its assets and property were placed in charge of the Finance Commissioner of the State of Missouri for liquidation. On the 9th day of August, 1923, the loans of the bank were $216,000, and the liabilities were $236,000. It appears from the

testimony of Oliver O. Mettle, Special Deputy Commissioner for the Bank of Jamesport, who had charge of the books and records of said bank, that in his opinion the Bank of Jamesport lost about $100,000 on account of bad paper. A. C. Martin, connected with the State Finance Department, testified that he was present when the board of directors of the Bank of Jamesport, with defendant present, were discussing the advisability of attempting to continue in business; that defendant offered no dissent and made no claim that the bank was not insolvent.

Such other matters as may be deemed important, will be considered in the opinion.

I. Defendant was convicted under the second count of information heretofore set out. It is based upon Section 3365, Revised Statutes 1919, which reads as follows:

"If any president, director, manager, cashier, or other officer of any banking institution, or the owner, agent or manager of any private bank or banking institution, or the president, vice-president, secretary, treasurer, director or agent of any trust company or institution doing business in this State, shall receive or assent to the reception of any deposit of money or other valuable thing in such bank or banking institution or trust company or institution or if any such officer, owner or agent of such bank or banking institution, or if any president, vice-president, secretary, treasurer, director or agent of such trust company or institution, shall create or assent to the creation of any debts or indebtedness, in consideration or by reason of which indebtedness any money or valuable property shall be received into such bank or banking institution or trust company or institution, after he shall (have) had knowledge of the fact that such banking institution or trust company or institution, or the owner or owners of any such private bank, is insolvent or in failing circumstances, he shall be deemed guilty of larceny, and upon conviction thereof shall be punished in the manner and to the same extent

as is provided by law for stealing the same amount of money deposited, or valuable thing: *Provided,* that the failure of any such bank or banking institution or trust company or institution shall be prima-facie evidence of knowledge on the part of any such officer or person that the same was insolvent or in failing circumstances when the money or property was received on deposit.''

The information on its face does not directly or indirectly charge that defendant, as cashier of a private bank, was guilty of any offense, nor does it charge that, as cashier of any trust company, he was guilty of an offense. It does in terms charge that defendant, on August 9, 1923, was cashier of a banking institution doing business in Missouri, etc. According to our conception of the above law, it is wholly immaterial whether the Bank of Jamesport was incorporated under the laws of Missouri, or whether it was doing a banking business in the State other than as a private bank or trust company without any charter. The record is devoid of any testimony tending to show that the Bank of Jamesport was acting in any respect as a private bank or trust company. On the other hand, the evidence discloses that the Bank of Jamesport had a board of directors, a cashier in the person of defendant, and such other employees as an incorporated bank of the State would be expected to have.

Counsel for defendant, on cross-examination of Miss Roberta Goodwin, bookkeeper for the Bank of Jamesport, had her testify that the letterheads of said bank disclosed that I. C. Hill was president, Ivo W. Lively, cashier, and that Roberta Goodwin and Lois Rayburn were assistant cashiers. This witness further testified, on cross-examination by defendant, that Mr. Hill, Mr. Lively, Mr. Arnold, Mr. McBrown, Mr. Gates and Mr. DeVorss were the directors of said bank; that McBrown resigned, and Gates took his place. It appeared from the testimony of this witness, and other witnesses, that the directors, cashier and president or vice-president of said bank, under oath, made reports from time to time to

the Commissioner of Finance in regard to the business transactions and condition of said bank, which was finally taken over by the Commissioner of Finance for liquidation. We are of the opinion, that the information is sufficient as to both form and substance; and that there was abundant, substantial evidence shown by the State from which the jury could legally find that the Bank of Jamesport on and prior to August 9, 1923, was duly incorporated under the laws of Missouri, if it were necessary to show that fact, and during said period was a banking institution doing business in said State.

II.   The court is charged with error in refusing to sustain defendant's demurrer to the evidence at the conclusion of the case, for the alleged "reason that defendant was charged in the information with receiving a deposit in the Bank of Jamesport, when said bank was insolvent and in failing circumstances,

Deposit or Loan?

whereas, the evidence on behalf of the State showed that the check and money of Mary Schuler, the prosecuting witness, was loaned to said bank on a 'certificate of deposit' for four months at four per cent interest, and that said loan created an indebtedness of said bank and was not a deposit therein."

Turning to the evidence in respect to this matter we find, that Harry Schuler testified in chief as follows:

"Q.   You deposited four hundred dollars there on the 9th of August? A. Yes, sir.

"Q.   For whom were you acting in making that deposit? A.   For my wife."

He also testified as follows:

"Q.   To whom did you give this check and money? A.   Mr. Lively himself."

The certificate of deposit signed by defendant and delivered to Harry Schuler, reads as follows:

"Certificate of deposit, No. 369, Bank of Jamesport, Jamesport, Missouri, August 9, 1923, four hundred dollars. Mary Schuler has upon deposit in this bank four hundred dollars, payable to the order of herself four

months after date, with interest from date at four per cent per annum on the return of this certificate properly endorsed.  This certificate bears no interest after one year from date and is not subject to check.

"Ivo W. Lively."

Miss Roberta Goodwin turned to the record entry showing the deposit of the $400 to the credit of Mary Schuler, and testified, without objection, as follows:

"Q.  August 9, 1923.  Now, what entry do you find there with respect to a deposit made by Mary Schuler? . . .  "A.  There is her credit with time deposit of $400.

"Q.  (By Mr. Leopard): And that entry in the ordinary and usual course of business and bookkeeping would indicate what?  A.  That she had deposited four hundred dollars on that date.

"Q.  And received for it what?  A.  A time certificate of deposit."

III.  It is contended by appellant under proposition two of his brief, that there was a variance between the allegations of the information and the proof.

We are of the opinion that the above contention is not sustained by the record.  The defendant is here without any countervailing evidence, and without objection having been made to above testimony.  We think the jury were fully justified in finding from the evidence that on August 9, 1923, the defendant, in person and as cashier, received from the Schulers as a deposit in the Bank of Jamesport $400 in money and its equivalent, which was to remain as a time deposit for a period of four months without being checked out, and upon which amount the bank was to pay interest at the rate of four per cent per annum.  In other words, the certificate of deposit delivered by defendant to Schuler, recognizes on its face, that the Bank of Jamesport, owed Mary Schuler $400 by reason of the deposit, and that she was to receive interest thereon at four per cent per annum and leave the money on deposit four months without checking out any portion of same.  It is evident that if the bank had

not failed, and suit had been brought six months after the above transaction, upon the refusal of the bank to honor Mary Schuler's check against said fund, the cause of action would properly have been based upon the deposit as evidence of indebtedness, and not upon the agreement to pay interest thereon for four months. [Paul v. Draper, 158 Mo. l. c. 200 and cases cited; State v. Salmon, 216 Mo. l. c. 520; 3 R. C. L. sec. 146, p. 516; 7 C. J. sec. 334, p. 646.]

In 3 Ruling Case Law, section 146, supra, it is said: "A deposit in a bank has been said to be the thing or the sums received from the depositor. The mere fact that the bank agrees to pay interest on money deposited does not prevent the transaction from being a deposit as distinguished from a loan."

In 7 Corpus Juris, section 334, page 646, it is asserted that: "A certificate of deposit is a written acknowledgment by a bank or banker of the receipt of a sum of money on deposit which the bank or banker promises to pay to the depositor, to bearer, to the order of the depositor, or to some other person or to his order."

Without considering the above question further, we hold that the jury in this case were justified in finding from the evidence that on August 9, 1923, Harry Schuler, as agent for his wife, deposited with the Bank of Jamesport money and property of the value of $400, and that defendant, as cashier for said bank, received said money and property on deposit for Mary Schuler.

IV.  The court is charged with error in the giving of Instruction 5, which reads as follows:

"If the jury find and believe from the evidence that on or about the 9th day of August, 1923, at the County of Daviess, State of Missouri, one Ivo W. Lively was
*Assumption of Facts.* then and there cashier of the Bank of Jamesport, Missouri, a corporation duly organized under the laws of the State of Missouri and that the same was a banking institution doing business in said State, and if you further find from the evidence

that said Ivo W. Lively then and there did unlawfully and feloniously receive on deposit in said Bank of James-port, Missouri, a certain check for the sum of three hundred and eighty-nine dollars and eighty cents, drawn by J. W. Cole, administrator of the estate of Willis Cole, deceased, upon the Farmers Bank of Springhill, Mis-souri, payable to Mary Schuler, together with money of. the amount of ten dollars and twenty cents, and that said check and money were then and there of the value of four hundred dollars, if you so find, and being the money and property of said Mary Schuler, if you so find, and that the said Ivo W. Lively at the time of re-ceiving the deposit of said money and check had knowl-edge of the fact that said Bank of Jamesport was in-solvent or in failing circumstances, if you find from the evidence that it was, then you should find the defendant guilty as charged in the second count of the informa-tion.''

This instruction is assaulted by appellant in several respects, and his criticisms of same will be considered in the order named.

(a)  It is said the above instruction is erronous because it assumes that the Bank of Jamesport was a corporation duly organized under the laws of the State of Missouri without proof thereof.  The most casual read-ing of said instruction, set out in full supra, clearly in-dicates that the above contention is not supported by the language used.  The commencement of said instruc-tion with the use of the word ''If'' clearly indicated that the. matters complained of were not assumed to be true, but must so appear and be found by the jury, from the evidence in the case, etc.

(b)  It is claimed that the instruction did not re-quire the jury to find that defendant was cashier of said bank at the time said deposit was made.  What we have just said in sub-proposition (a) applies with equal force to the above contention.

(c)  It is asserted, that said instruction assumed that defendant at the time he received the deposit of said

money and check had knowledge of the fact that said bank was insolvent and in failing condition. This contention, like the other two mentioned, is untenable and without merit.

(d) It is asserted that said instruction is broader than Section 3365, Revised Statutes 1919, in that it only required the jury to find that defendant had knowledge that said bank was insolvent or in failing circumstances at the time he received said deposit, whereas, the statute provides that he must have received the deposit after he shall have had knowledge of the fact that said Bank of Jamesport was insolvent or in failing circumstances.

Broader than Statute.

We are not favorably impressed with this contention. If defendant had knowledge ''at the time of receiving the deposit,'' as alleged in said instruction, that the Bank of Jamesport was insolvent or in failing circumstances, he should have proceeded no further, and declined to receive the deposit. The above contention is without the slightest merit. We accordingly hold that said Instruction 5 properly declared the law and is not subject to legal criticism. [State v. Burlingame, 146 Mo. l. c. 214.]

V. Complaint is made with respect to Instruction 9, given by the court, which reads as follows:

''You are instructed that the demands of the bank within the meaning of the foregoing instruction are all sums owing by it to other banks, firms, corporations, or persons whether for money borrowing, or for money deposited with it, either on time certificates of deposit, or on deposit subject to checks; but the amount owing by the bank to its stockholders as such for its capital stock and surplus if any, should not be considered as a debt against the bank within the meaning of the foregoing instructions.''

Assets and Debts.

We are of the opinion that the above instruction, outside of the clerical error in using ''borrowing'' for

"borrowed," properly states the law as applied to this case.

The court at the instance of defendant also gave three instructions marked D1, D2 and D3, relating to the same subject, which read as follows:

"D1. A bank is insolvent or in failing circumstances when, from any cause, it is unable to pay its debts in the ordinary or usual course of business. It is not expected to be able at once to pay every debt it owes, but it must be able to pay or provide for its debts as they fall due in the usual course of business. 'Insolvency,' or a 'failing condition,' in the ordinary acceptance of the term, when applied to a bank, means inability to meet liabilities in the usual course of business.

"D2. The court instructs the jury that in considering the condition of the Bank of Jamesport, on the 9th day of August, 1923, you will not take into account the fifteen thousand dollars of capital stock of said bank, or the two thousand and fifty dollars surplus of said bank, as liabilities thereof.

"D3. The law of this State does not require a bank to retain on hand all the money of its depositors; nor is it expected to be able at once to pay every debt it owes, but is only required to pay or to provide for the payment of them as they fall due in the usual course of business. If, therefore, you find from the evidence that on the 9th day of August, 1923, said Bank of Jamesport possessed sufficient assets to pay, within a reasonable time, all of its liabilities through its own agencies, then said bank was not insolvent or in failing circumstances on said date, and if you so find you should acquit the defendant."

These instructions are consistent with each other and gave to the jury all the law that was needed in respect to above matter. The court committed no error in giving instruction numbered nine.

VI. The court is charged with error in admitting in evidence the reports made by the Deputy Finance

311 Mo. Sup.—28.

Commissioner to the State Finance Commissioner for the years 1920, 1921 and 1922. It is insisted that there was no evidence offered tending to show that the contents of said reports were known to the defendant, or that the latter had any knowledge of said reports whatever. It is also alleged that said reports contained statements and criticisms of the officers of said Bank of Jamesport, which inflamed and prejudiced the minds of the jurors against the defendant.

*Examiner's Reports.*

Considering these objections in the order named, we think counsel for appellant are in error in contending that appellant had no knowledge as to the contents of said reports. It appears from the record that Exhibit 44, offered in evidence by the State, was the report of A. B. Lowry, State Bank Examiner, made to the Commissioner of Finance, stating the condition of the Bank of Jamesport on June 28, 1921. In said report it was designated as an incorporated bank, then followed therein a series of questions propounded to defendant and the other officers of the bank, with their answers made under oath, showing the condition of said bank, and how its business was conducted. The affidavit made a part of Exhibit 44 and was signed and sworn to by W. L. Arnold, vice-president; Ivo W. Lively, cashier; W. L. Arnold, Ivo W. Lively, J. W. DeVorss and C. S. Lockridge, directors. The testimony of A. B. Lowry shows that defendant was present when the above investigation was made, and assisted in furnishing the data for Exhibit 44, under oath.

Exhibit 48 was the report of the Bank Examiner as to the condition of the Bank of Jamesport on August 23, 1920. The report is similar in its general make-up to Exhibit 44. It shows on its face that the officers of the Bank of Jamesport furnished the Bank Examiner the data showing the condition of the bank, and the business which the officers had been transacting, etc. This data, in the form of questions and answers, was sworn to by Jacob H. Nulf, vice-president, Ivo W. Lively, cashier,

Jacob H. Nulf, Ivo W. Lively, C. S. Lockridge and W. L. Arnold, directors.

The defendant was not only present when the bank was examined as shown in exhibits 44 and 48 supra, but actively assisted in furnishing the data for said reports.

We think there is substantial evidence in the record tending to show, that defendant was present when the various examinations of the condition of the Bank of Jamesport were being conducted, and that he furnished, in connection with the other officers of said bank, information relating to the condition of said bank and its management. Aside from the foregoing, it clearly appears that defendant was not only cashier of said bank, but he looked after the loans and was the active business manager of said institution.

In view of the foregoing, we think the jury were fully justified in finding that defendant was present when these examinations of his bank were made and assisted in furnishing the data for said reports.

When these reports, exhibits 44, 46 and 47, were offered in evidence, the only objection made thereto is as follows:

"Mr. Ashby: The defendant objects to the introduction of the exhibits, 44, 46 and 47, because the reports show that they are reports made by examiners of the Bank of Jamesport to the Commissioner of Finance, and there is no evidence to show that the defendant had any knowledge of the contents of the reports. There is no evidence showing that he was present, or that the reports were presented or examined by him, and for that reason they are not binding on defendant."

It will be observed that no comments made by the examiners were pointed out or objected to when the reports were offered in evidence. The objection, as made, is untenable for the reasons heretofore stated.

Section 11678, Revised Statutes 1919, provides that: "It shall be the duty of the bank commissioner to carefully preserve all records, reports and papers pertaining to his department."

The purpose of this law is to maintain for use, in cases of necessity, a public record of the reports made as to the financial condition of banks from time to time in order that they may be taken over by the State, if found to be insolvent or in a failing condition. These reports are likewise important, in tracing the financial condition of banks, and the acts and conduct of the managers thereof, when they are charged with receiving money on deposit, knowing at the time that the bank is insolvent or in failing circumstances. [State ex rel. v. Cox, 268 S. W. l. c. 90; State v. Salmon, 216 Mo. l. c. 530.] There is nothing in the record tending to show that said reports were not absolutely accurate in every respect. The objection made to the introduction of said reports has been shown to be without merit. The above assignment of error is accordingly overruled.

VII. It is now insisted by counsel for appellant, that Instruction 8, given by the court, is erroneous. This contention seems to have been an afterthought, as the original brief presented no such issue. An additional assignment of error, however, has been filed in respect to above matter, and discussed in the printed brief of Hon. Henry P. Lay, as *amicus curiae.* Said Instruction 8 reads as follows:

Prima-Facie Evidence.

"The court instructs the jury that the failure of the banking institution in this case is prima-facie evidence of knowledge on the part of the defendant that the same was insolvent and in failing circumstances on August 9, 1923. The court instructs the jury that prima-facie evidence is such that raises such a degree of probability in its favor that it must prevail unless it be rebutted."

In order that it may be considered with Instruction 8 supra, we herewith print Instruction D5, given at the instance and on behalf of appellant, which reads as follows:

"You are instructed that the presumption of innocence with which the defendant is surrounded by the law surrounds and protects him in this case, notwithstanding the fact that the State may have established a prima-

facie case as defined in the instructions heretofore given
you, and the burden remains with the State continuously
in this cause, and it devolves upon the State to establish
defendant's guilt beyond a reasonable doubt, notwith-
standing such prima-facie case.  So if under all the
facts and circumstances in evidence there still is a rea-
sonable doubt in your mind as to his guilt, you should
acquit him.''

The concluding part of Section 3365, Revised
Statutes 1919, on which said Instruction 8 is based,
reads as follows:

''Provided, that the failure of any such bank or
banking institution or trust company or institution shall
be prima-facie evidence of knowledge on the part of any
such officer or person that the same was insolvent or in
failing circumstances when the money or property was
received on deposit.''

The above proviso has been in force for the last
thirty years, and was contained in the Revised Statutes
of 1879 and 1889 before the present law was enacted
in 1895 (Laws 1895, p. 158).

In State v. Buck, 120 Mo. 1. c. 487 and following,
BURGESS, J., in behalf of this Division, in an able and
exhaustive review of the constitutionality of the above
proviso, and the validity of an instruction numbered
three, similar to the one numbered eight given in this
cause, sustained the same.  On page 495, Judge BURGESS
clearly indicates that there is no inconsistency between
Instruction 8 supra, and D-5 given on behalf of defend-
ant.

In State v. Sattley, 131 Mo. 1. c. 492 and following,
Judge GANTT re-affirmed the validity of Instruction 8
supra, and upheld the proviso in Section 3365, Revised
Statutes 1919.

In State v. Darrah, 152 Mo. 522, Judge BRACE,
speaking for the court en banc, in which all the judges
concurred, except SHERWOOD, J., who was absent, ap-
proved in substance the giving of Instructions 8 and
D5 supra.

In State v. Salmon, 216 Mo. l. c. 524-5, Judge Fox, representing this Division, sustained the validity of Instruction 8, given in this case.

In the brief of Mr. Lay, at page three, it is said: "This instruction" (No. 8) "in identical or similar language, has been before this court in some eight cases, and in each case has been expressly or by necessary inference, approved by this cout." He then calls our attention to the rulings of the Supreme Court in State v. Swarens, 294 Mo. 139; State v. Hogan, 252 S. W. 387, and State v. Andrews, 297 Mo. 287, and claims that they, in legal effect, overturn the eight cases above mentioned.

In all three of the above cases this court was considering the rules of evidence and procedure under common-law principles. None of the cases cited by appellant have gone to the extent of holding that the Legislature cannot enact a provision like that at the conclusion of Section 3365, Revised Statutes 1919. On the contrary, several of our decisions heretofore mentioned have in expess terms approved the constitutionality of Section 3365, including said proviso, and their rulings in that respect meet with our approval.

We hold that the Legislature had the legal right, as a co-ordinate branch of the state government, in the exercise of its police power, to pass Section 3365, Revised Statutes 1919, including said proviso. [Hicks v. Simonsen, 270 S. W. l. c. 325; State v. Tallo, 274 S. W. l. c. 468-9.] The Legislature having been vested with the constitutional right to legally enact Section 3365, including said proviso, it logically follows that Instruction Eight, based on the language of said proviso, cannot be called in question under the rulings in the Swarens case, and the other cases cited.

Without extending this discussion further, we hold that Section 3365 supra, including said proviso, is valid. We further hold, that Instruction 8 properly declared the law, and fairly presented the issues before the jury

in connection with Instruction D5, given in behalf of appellant.

VIII.   We have fully considered all the law questions presented in the case, and in conclusion will briefly consider the outstanding facts relating to the merits of the controversy.   We are clearly of the opinion Facts of that, on the facts disclosed in this record, the Case. jury were justified in finding therefrom that on August 9, 1923, when defendant received the deposit in controversy, the Bank of Jamesport was not only in a failing condition at that time, but for all practical purposes was insolvent.   It appears from the record, and from the State's Exhibit 7, that on August 22, 1923, the officers of the Bank of Jamesport had a called meeting, at which the following officers of said bank were present: W. L. Arnold, A. L. Terry, C. S. Lockridge, S. W. DeVorss, and Ivo W. Lively.   W. L. Arnold was president of said meeting, and announced that it was called for the purpose of closing said bank, ''on account of a run on the bank, and insufficient funds to pay.''   It was unanimously decided at this meeting, that the bank should be declared closed, a notice posted and the state department notified. It appears from all the evidence in the case that defendant practically had charge of all the bank's business, and apparently conducted it to suit himself.   In short, the evidence warranted the jury in finding that on and prior to August 9, 1923, defendant had full knowledge of the fact that said bank was then in a failing condition if not insolvent.   There is clear and convincing evidence in the record tending to show that the Bank of Jamesport had a full corps of officers, including a president, directors, cashier, and clerks; that it was not a private bank, nor was it a trust company; that it was reporting to the Commissioner of Finance as an incorporated bank, and transacting business as a banking institution in the State of Missouri.   Under such circumstances, defendant would be guilty, if the evidence sustained the charge against

him, whether said bank was incorporated or not. [State v. Buck, 108 Mo. l. c. 627-8.]

We have examined the instructions, and find that they are fair to defendant and properly declared all the law that was necessary for the jury to have in passing upon the merits of the case. The case was well tried by court and counsel. We find no error of which appellant can legally complain with respect to the rulings of the court during the progress of the trial. The defendant has been found guilty upon substantial evidence, after a fair and impartial trial.

The judgment below is accordingly affirmed. *Higbee, C.,* concurs.


PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur. *White, J.,* concurs in separate opinion; *Walker, P. J.,* and *Blair, J.,* concur in both opinions.


WHITE, J. (concurring).—I concur on every point decided in the opinion in this case, written by RAILEY, C.

However, as there are a number of cases now under submission in which questions are involved similar to those presented here, it is not amiss to consider more fully some of the alleged errors.

Under the statute, Section 3365, Revised Statutes 1919, the offense charged here is that of receiving money by the cashier, etc., of a bank, for deposit, "after he shall have had knowledge of the fact that such banking institution . . . is insolvent or in failing circumstances."

Knowledge at Time.

Appellant claims Instruction 5 was error, because it required a finding only that the defendant had knowledge of the failing condition of the bank, etc., *at the time* said deposits were received; whereas, the statute requires that he should have received a deposit *after* he had such knowledge. This argument is based upon a formal and not a real inaccuracy in the language of the instruction

when compared with the statute. The statute does not require that the knowledge, which the officer receiving deposits had, had come to him any length of time before the act of receiving the deposit. It would not matter whether it was a month before or an instant before. If at the time he received the deposit he had such knowledge, the reception was *after* the acquisition of the knowledge. His possession of the knowledge must have been acquired prior to that moment. It is his consciousness, at the moment he is receiving the deposit, of the peril to the depositor, which makes the act criminal. The statute is intended to cover every case in which an officer of such an institution receives a deposit when he knows, at the time he receives it, that it is likely to be lost.

II. Objection to Instruction 8 is argued by the *amicus curiae.* That instruction told the jury that the failure of the banking institution in this case is prima-facie evidence of knowledge on the part of the defendant that the same was insolvent and in failing

Prima-Facie Evidence: Presumption. circumstances at the time the deposit was received. It is almost in the language of the proviso to Section 3365, Revised Statutes 1919, and the same instruction has been repeatedly approved by this court, as counsel admits. The statute providing that such a failure shall be prima-facie evidence of knowledge is constitutional, and counsel concede that it has been so held. But he argues that since the decision in the case of State v. Swarens, 294 Mo. 139, and other cases of similar import, the instruction should be held bad. In the Swarens case this court held that possession of recently stolen goods was not a presumption of guilt, but was merely evidence to be considered by the jury, overruling an old precedent as shown by a long line of decisions. And for similar reasons it is argued we should overrule the precedent where decisions of this court have approved an instruction, such as the one objected to here.

Counsel overlooks the fact that the Legislature has authority to establish a rule of evidence so long as such rule does not conflict with rights guaranteed by the Constitution, and in so doing it may alter rules of evidence as they existed at common law or by previous statute. [12 C. J. 823; State v. Potello, 119 Pac. l. c. 1028; State v. Salmon, 216 Mo. l. c. 525; City of St. Joseph v. Farrell, 106 Mo. 437.] The Legislature has authority to declare that proof of certain facts or circumstances shall constitute prima-facie evidence of other facts which may be inferred. Such, for instance, as that a special tax bill shall be prima-facie evidence of the liability of the owner named therein for the amount of the bill. This court may overrule a precedent established by its own decisions in the interpretation of the common law as it did in the Swarens case. But it cannot repeal an act of the Legislature. We had authority to say in the Swarens case that the old rule should no longer be followed. It was not supported by legislative act. If the Legislature had declared that the possession considered there authorized a prima-facie presumption of guilt, we would have been bound by it.

The proviso to Section 3365 does not say how long after the reception of the deposit the failure of the bank shall take place in order to make it prima-facie evidence of knowledge on the part of the officer; but it requires that the bank shall be in a failing condition at the time the deposit is received, and a subsequent failure at any time thereafter will be prima-facie evidence of knowledge on the part of the bank official. Of course, there must be a causal connection between the failing condition at that time and the subsequent failure. If that condition did not result in failure, but was due to subsequent causes, that fact would be a good defense.

III. It is further claimed by the *amicus curiae* that the word "failure" as used in Instruction 8 should have been defined. It is argued that the jury should be told

Insolvency. whether a failure means insolvency, or a mere closing of the doors of the bank; that a bank may be perfectly solvent and yet have to close.

The jury could experience no trouble in ascertaining the meaning of failure in this instance, because fourteen days after the deposit was received the board of directors of the bank suspended its business and its property was placed in the hands of the Finance Commissioner of Missouri for liquidation. It ceased to be a going concern, and at the time, as the evidence showed, its liabilities far exceeded its assets. From the evidence the jury could not misunderstand what was meant by failure. There was both insolvency and closing its doors for the purpose of liquidation of the assets. The State made out a perfect case against the defendant, and the judgment is properly affirmed. All concur.